IN RE the MARRIAGE OF: David W. PREUSS, Petitioner-Respondent, v. Betty A. PREUSS, Respondent-Appellant.†

Court of Appeals

*No. 94–1148. Submitted on briefs March 8, 1995.—Decided May 4, 1995.*

(Also reported in 536 N.W.2d 101.)

†Petition to review denied.

97

For the respondent-appellant the cause was submitted on the briefs of *Wm. H. Rudolph* of Hillsboro.

For the petitioner-respondent the cause was submitted on the brief of *Mark L. Goodman* of *Osborne & Goodman, S.C.* of Sparta.

Before Eich, C.J., Dykman and Vergeront, JJ.

DYKMAN, J. Betty A. Preuss appeals from a judgment of divorce and raises issues relating to the trial court's property division. Betty contends the trial court erred by not excluding from the marital estate offspring of cattle she was given before the marriage,

by not excluding amounts representing the value of an inheritance she received during the marriage and by not excluding the value of bonds she brought into the marriage. She also argues that the trial court erroneously exercised its discretion by failing to deviate from an equal division of the marital estate because of tax consequences she will incur from an eventual sale of the farm, and because of the bonds and inheritance. She also contends the trial court improperly valued the herd of cattle. We reject all but the last of Betty's arguments and therefore affirm in part and reverse in part. We also deny David W. Preuss's motion for RULE 809.83(1), STATS., double costs, damages, penalties and attorney fees.

## BACKGROUND

Betty and David were divorced in 1994 after a twenty-year marriage. The parties have two daughters, now aged seventeen and thirteen. Betty and David stipulated as to legal custody and placement of their daughters. Most of the trial was devoted to financial issues concerning the family's dairy farm and the value and division of the marital estate.

When the parties were married, Betty owned seventeen Holstein dairy cattle given to her by her father. She also owned about $20,000 in bonds. At the time of the divorce, the value of the bonds was only $2,970 as most of the money had been used for operating the farm. Betty also inherited $15,000 from her great aunt during the marriage. That money was kept in a separate account in her name and grew to more than $20,000. The account, however, was exhausted, Betty claims, after she loaned the money to David for the farm. The parties offered an appraisal of the value of all of the livestock including the herd of cattle.

The trial court adopted the livestock appraisal and did not exclude from that amount the eleven cattle Betty claims are the progeny of the original seventeen cattle. The court also did not vary from the livestock appraisal to take into account cattle Betty claims were sold or died after the appraisal was completed. The court excluded from the marital estate $2,970 representing the value of the bonds at the time of the divorce but did not exclude any amount for Betty's inheritance as that money was spent and not traceable to any existing asset.

The trial court divided the marital estate equally, awarding the farm to Betty and ordering Betty to make a $35,419 net equalization payment to David. When dividing the marital estate, the court did not deviate from an equal division because of any potential tax consequences that could result from a possible sale of the farm by Betty, or for Betty's inheritance or the gifted bonds. Betty appeals.

## STANDARD OF REVIEW

■

A determination of whether property should be excluded from the marital estate requires us to construe § 767.255(2), STATS. *Arneson v. Arneson*, 120 Wis. 2d 236, 242-43, 355 N.W.2d 16, 19 (Ct. App. 1984). Statutory construction is a question of law which we review *de novo. Id.* at 243, 355 N.W.2d at 19. The burden of showing property should be excluded from the marital estate is on the party asserting the claim. *Brandt v. Brandt*, 145 Wis. 2d 394, 408, 427 N.W.2d 126, 131 (Ct. App. 1988). The division of the marital estate rests within the sound discretion of the trial court. *Id.* at 406, 427 N.W.2d at 130.

## CATTLE OFFSPRING

Betty argues that the trial court erred by failing to exclude from the marital estate the value of eleven cattle she claims are the progeny of seventeen gifted cattle she brought into the marriage. According to Betty, because the cattle retained their identity and character as gifted or inherited property, they should not have become part of the marital estate subject to division between the parties upon divorce. We disagree.

Section 767.255(2)(a), STATS., provides:

> Except as provided in par. (b), any property shown to have been acquired by either party prior to or during the course of the marriage in any of the following ways shall remain the property of that party and is not subject to a property division under this section:
>
> 1. As a gift from a person other than the other party.
> 2. By reason of the death of another . . . .
> 3. With funds acquired in a manner provided in subd. 1. or 2.

The eleven cattle Betty contends are the offspring of the seventeen gifted cattle are not excludable by the plain language of § 767.255(2)(a), STATS. Those eleven cattle were neither acquired by gift nor were they purchased with funds acquired by gift. Those eleven cattle are the offspring of the gifted cattle and are not gifted animals themselves. Animal offspring are akin to dividends paid on gifted stock, which are treated as income and are included in the marital estate. *See Arneson*, 120 Wis. 2d at 244-45, 355 N.W.2d at 20. Animal offspring are similar to dividends in that an animal may replace itself several times over the course of its life

and come to be owned by a party by virtue of that party's ownership of the "parent."

Whether the identity or character of property has been maintained is irrelevant when we have determined as an initial matter that the property at issue has not been gifted or inherited. A discussion of identity and character assumes that a party has shown that the property was gifted or inherited. Here, there is no question but that all of the seventeen cattle given to Betty by her father are no longer part of the herd. The eleven offspring were not given to Betty by any person, but became part of the herd as a result of bovine reproduction and therefore, they never had a gifted or inherited character and identity to maintain. Consequently, they do not fall within § 767.255(2)(a), STATS., and are therefore not excludable. Accordingly, the trial court properly included them in the marital estate.

## INHERITANCE AND BONDS

Betty also argues the trial court erred by failing to exclude from the marital estate sums representing the full value of an inheritance and the value of gifted bonds. At the very least, Betty argues, those amounts should have been considered for the purposes of deviating from an equal division of the marital estate.

Betty inherited $15,000 and placed that money in a separate account which later grew to more than $20,000. However, that inheritance no longer exists because Betty used the money to operate the farm. Nonetheless, according to Betty, the trial court should have excluded $20,000 from the marital estate.

Betty concedes that she is unable to trace the inheritance to existing assets. Inherited property that

loses its character or identity is included in the marital estate. *Brandt*, 145 Wis. 2d at 408-09, 427 N.W.2d at 131. The trial court did not err when it did not exclude the inheritance.

As for the bonds, the trial court excluded the value of the bonds as of the date of the divorce, $2,970, instead of their value when she received them, or $20,000. Most of the bonds were used in operating the farm and never replaced. Betty's argument that the one-time value of the bonds should be excluded from the marital estate reflects a misunderstanding as to the nature of the law for determining how and what property is to be divided upon divorce. If the asset no longer exists, the court cannot exclude it from the marital estate. Section 767.255(2)(a), STATS., excludes existing or traceable gifted or inherited property. Once that asset is depleted, there is nothing to be excluded. Thus, the trial court did not err when it only excluded $2,970, the value of the bonds at the time of the divorce.

Betty also argues that because the inheritance and bonds represent a significant financial contribution to the marital estate, those amounts should have been considered for the purposes of deviating from an equal division of the marital estate. The trial court may, depending upon the facts of the case, deviate from an equal division of the marital estate in light of inherited and gifted property brought by one party to the marriage. *Schwartz v. Linders*, 145 Wis. 2d 258, 263, 426 N.W.2d 97, 99 (Ct. App. 1988). "[I]f the marriage is of short duration, and the trial court feels that one spouse will receive a windfall without having participated much in the economic partnership of the marriage, then the once inherited stature of divisible property

may be a cogent reason for dividing an estate unequally." *Id. See also* § 767.255(3)(b) and (m), STATS.

■■

Our review of the record fails to show that Betty raised before the trial court the issue of deviating from an equal division of the marital estate because of these contributions.[1] Issues raised for the first time on appeal are deemed waived. *Vollmer v. Luety*, 156 Wis. 2d 1, 10-11, 456 N.W.2d 797, 801-02 (1990). Absent evidence in the record to the contrary, we will not presume that the argument was made. At trial, Betty offered a marital estate balance sheet showing only that she intended premarital asset contributions and gifted and inherited property to be excluded from the marital estate. Her balance sheet does not suggest that Betty was seeking more than fifty percent of the marital estate. The balance sheet shows that once the trial court determined what property to include in the marital estate, the marital estate should be divided equally. The court did not address what appears to be an issue not raised before it. Accordingly, we deem the argument waived.

---

[1] Oral arguments were held off the record. Consequently, if counsel made the argument, it was not preserved for appeal. The only reference we find in the record relating to this issue is in a question by Betty's counsel to Betty which states, "Looking down at your premarital contributions. We have discussed the law regarding the Court's ability to consider what the party brought to the marriage, correct?" Betty responded, "Yes." This question is not an argument that the trial court should deviate from an equal division of marital property, and was asked in the context of a discussion of which assets enumerated on Betty's marital estate balance sheet should be excluded from the marital estate. It does not address what the trial court should consider when determining whether to deviate from an equal division.

## SALE AND TAX CONSEQUENCES

Betty argues that the trial court erroneously exercised its discretion by failing to consider the potential tax consequences resulting from a sale of the family farm when dividing the marital estate. Betty contends that it is highly probable that she will have to sell her farm and that she will incur substantial tax consequences as a result of this sale. She argues that the marital estate should be adjusted to take those tax consequences into account. We disagree.

The trial court may consider the tax consequences to each party when dividing the marital estate. Section 767.255(3)(k), STATS. The court, however, is not obligated to consider the tax consequences of a hypothetical or theoretical disposition of property. *Ondrasek v. Ondrasek*, 126 Wis. 2d 469, 480, 377 N.W.2d 190, 194 (Ct. App. 1985). When there is no evidence that a liability is imminent or likely, consideration of it "strays into the realm of speculation and mere theory." *Popp v. Popp*, 146 Wis. 2d 778, 793, 432 N.W.2d 600, 605 (Ct. App. 1988).

The trial court determined that whichever party was awarded the farm would be responsible for tax consequences if the property was later sold. Betty presented evidence that the tax liability on an eventual sale of the farm would be about $68,000. Yet Betty testified that she has no plans to sell the farm and that her eldest daughter intends to take it over when she finishes with school. The evidence does not show that a sale is probable or imminent. In fact, it shows that a sale will occur only as a last resort. Accordingly, the trial court properly declined to consider possible tax consequences when dividing the marital estate.

## VALUE OF CATTLE HERD

Betty argues that the trial court erred when it did not value the herd of cattle as of the date of divorce. The court's determination of the value of an asset of the marital estate is a finding of fact. *Liddle v. Liddle*, 140 Wis. 2d 132, 136, 410 N.W.2d 196, 198 (Ct. App. 1987). The court should determine the fair market value of an asset as of the date of divorce. *Holbrook v. Holbrook*, 103 Wis. 2d 327, 334, 309 N.W.2d 343, 346-47 (Ct. App. 1981). We will not upset this finding unless it is clearly erroneous. Section 805.17(2), STATS.

The parties stipulated as to admissibility of an appraiser's valuation of the livestock so that the appraiser did not have to appear at trial. Betty testified that the value of the herd had diminished since the date of the appraisal because of the death and sale of several of the cattle,[2] and that she gave David one-half of the proceeds of those sales.[3] David did not object to this testimony. The trial court adopted the appraiser's value of the livestock and did not deviate from that amount to take into account the cattle that were no longer part of the herd. That value is clearly erroneous. Accordingly, we remand to the trial court for an adjustment to the marital estate and to the equalization payment.

---

[2] Betty testified that since the date of the appraisal, the herd had been reduced in value by $3,175 but increased in value by $500, for a net decrease of $2,675.

[3] We do not know whether David and Betty still had the proceeds of the sales at the time of their divorce hearing, nor whether their bank accounts contained these proceeds at the time of the divorce.

## SANCTIONS

Finally, David moved this court for double costs, a penalty, damages and reasonable attorney fees pursuant to RULE 809.83(1), STATS.[4] David argues that Betty filed this appeal for the purpose of delaying a $35,419 cash equalization payment she owes David. We conclude that both parties have taken positions reasonably based in law or equity, and that Betty has prevailed on one of her issues. Accordingly, we deny David's motion. No costs to either party.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.

---

[4] RULE 809.83(1), STATS., provides in relevant part, "If the court finds that an appeal was taken for the purpose of delay, it may award: (a) double costs; (b) a penalty in addition to interest not exceeding 10% on the amount of the judgment affirmed; (c) damages occasioned by the delay; and (d) reasonable attorneys fees."