IN RE the MARRIAGE OF:

Amy RUMPFF, a/k/a Amy Forkins, Joint-Petitioner-Respondent,

v.

Timothy Earl RUMPFF, Joint-Petitioner-Appellant.

Court of Appeals

*No. 03–2646. Submitted on briefs June 2, 2004.—Decided September 8, 2004.*

2004 WI App 197

(Also reported in 688 N.W.2d 699.)

On behalf of the joint-petitioner-appellant, the cause was submitted on the briefs of *James Ungrodt*, Kiel.

On behalf of the joint-petitioner-respondent, the cause was submitted on the brief of *Travis K. Glandt* of *Kummer, Lambert & Fox, LLP*, Manitowoc.

Before Anderson, P.J., Brown and Snyder, JJ.

¶ 1. SNYDER, J.    Timothy Earl Rumpff appeals the property division and child support award associated with a judgment of divorce. He argues that the trial court misinterpreted or misapplied child support regulations, erroneously valued retirement assets, and failed to properly consider contributions Timothy made to the marital residence. Timothy asserts that the trial court erroneously exercised its discretion and that the matter should be remanded for further proceedings. We disagree and affirm the judgment of the trial court.

## FACTS

¶ 2. Timothy Rumpff and Amy Rumpff (a/k/a Amy Forkins) were married on September 29, 1986. They had two children during the marriage, Marcus, born April 7, 1989, and Megan, born October 14, 1992. The parties filed a joint petition for divorce in August 2001.

¶ 3. A temporary order provided that the parties would have joint legal custody of the children and that they would share physical placement on an alternating weekly basis. The order also provided that Timothy would keep temporary occupancy of the marital residence and would pay the mortgage, taxes, and insurance on the residence. Finally, the order advised that a guardian ad litem would be appointed for the children.

¶ 4. An amended temporary order incorporated the GAL's recommendation for placement, and revised the schedule as follows: Timothy would have placement on Mondays and Tuesdays from after school until 7:00 p.m., and a Wednesday overnight, with alternating weekends from Friday after school until Sunday evening. Amy would have placement at all other times. The amended order stated that this placement arrangement "result[ed] in approximately equal sharing of time with the children."

¶ 5. The trial took place on May 12, 2003. The parties stipulated to a modified placement schedule which substantially adopted the GAL's previous recommendations. The modifications were as follows: (1) summer vacation would be split equally, including overnights, in increments to be agreed upon by the parties; (2) each party would have two one-week periods of uninterrupted placement during the summer for purposes of vacationing; (3) during the school year, Timo-

611

thy would have two additional overnights per month with Megan in September, October, April and May; and (4) in the remaining months during the school year, there could be occasional additional overnights for Megan with Timothy. The court incorporated the placement stipulation into the judgment of divorce and concluded that Timothy's time with the children represented approximately thirty-six percent of the overnight placements. The court expressly declined to afford any overnight equivalency credit to Timothy for the days he had placement until 7:00 p.m.

¶ 6.  The trial court applied the child support percentage guideline found in the Wisconsin Administrative Code to arrive at the child support award of $155 per week, less a $26 weekly credit for Amy's portion of the children's health insurance premium. WIS. ADMIN. CODE § DWD 40.03(1)(b) (2003).[1] The court decided to apply the standard guideline, here twenty-five percent of Timothy's 2002 gross income, despite placement of the two children with Timothy for thirty-six percent of the time. The court reasoned that setting child support at the guideline level and eliminating Timothy's responsibility for thirty-six percent of the children's variable expenses would eliminate the need for splitting expenses sixty-four/thirty-six between the parties.

¶ 7.  With regard to the property division, the trial court reduced the value of Amy's retirement assets by twenty percent to reflect potential tax consequences. The court determined that Timothy would not receive

---

[1] All references to the Wisconsin Administrative Code are to the version found in the Wisconsin Administrative Register, January 2003, No. 565 unless otherwise noted. Revisions that are referenced in this opinion appear in the Register, December 2003, No. 576.

any credit for 401(k) loan payments he made during the pendency of the action, nor would he receive credit for contributions made to his 401(k) plan since the divorce action commenced. The court also determined that Timothy brought $12,000 from a previous divorce settlement into the marriage and that Timothy's parents gifted 0.9 acres of land to Amy and Timothy. The parties each received a share of the personal property accumulated during the marriage, which included horses and a trailer, snowmobiles, automobiles, a camper, furniture, and jewelry.

¶ 8.  Timothy appeals, challenging the child support award and several aspects of the property division.

## DISCUSSION

¶ 9.  Timothy challenges the child support award, alleging that the amount of child support should have been reduced using the shared-time payer calculation and that he should receive credit against his child support obligation because he provides overnight equivalent care for the children. He also argues that Amy's pension plan should not be valued at twenty percent less than its current assessment because there was no proof of potential tax consequences offered at trial. Finally, Timothy contests the court's property division, arguing that the court should have considered his contributions to the marital estate and should have deviated from an equal distribution of property. We take each issue in turn.

*Shared-Time Payer Child Support Calculation*

¶ 10.  Timothy asserts that the trial court erroneously exercised its discretion in setting child support because it did not apply the shared-time payer formula

under WIS. ADMIN. CODE § DWD 40.04(2)(b), which provides for a reduction in child support for a shared-time payer. The determination of appropriate child support is committed to the sound discretion of the trial court and we will affirm the court's discretionary act if the trial court examined the relevant facts, applied a proper standard of law, and used a rational process to reach a conclusion that a reasonable judge could reach. *Luciani v. Montemurro-Luciani*, 199 Wis. 2d 280, 294, 544 N.W.2d 561 (1996). Whether a trial court properly exercised its discretion is a question of law. *Id.*

¶ 11. Timothy first directs us to WIS. STAT. § 767.25(1j) (2001–02),[2] which instructs the trial court to determine child support payments based on the percentage standards promulgated by the Department of Workforce Development. WISCONSIN ADMINISTRATIVE CODE § DWD 40.03(1), entitled "Determining child support using the percentage standard," presents the method for calculating the income of the payer and the percentage to be applied. The regulations allow for deviation from the straight percentage standard when the payer parent is a "shared-time payer." *See* § DWD 40.04(2). A shared-time payer is a "payer who provides overnight child care or equivalent care beyond the threshold and assumes all variable child care costs in proportion to the number of days he or she cares for the child under the shared-time arrangement." Sec. DWD 40.02(25).[3] Here, Timothy had overnight placement of

---

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[3] We observe that WIS. ADMIN. CODE § DWD 40.02(25) has been revised and renumbered, effective January 1, 2004. The current definition for "shared-time payer" is in § DWD 40.02(26) and has been renamed "shared-placement payer"; the definition itself has been changed, the reference to equivalent care has

the children for approximately 133 nights per year, or an estimated thirty-six percent of the overnight placement.

¶ 12. The trial court used the child support percentage guideline and Timothy's 2002 gross income to arrive at a support amount of $155 per week. The court also determined that Amy's portion of the children's health insurance premium could be deducted from the weekly support, leaving Timothy with a child support obligation of $129 per week. Timothy challenges the trial court's use of his 2002 gross income as the basis for the calculation; however, the court expressly determined that Timothy's 2002 gross income was the figure that was "most accurate in determining what his income [is] currently."

¶ 13. The trial court determined that the shared-time payer calculation under Wis. Admin. Code § DWD 40.04(2)(b) would reduce Timothy's child support obligation by twenty percent and would obligate him to pay thirty-six percent of the children's variable expenses. After testimony from both Timothy and Amy, the court decided that it would be fair for Timothy to pay child support under the standard percentage guideline, without a reduction under the shared-time payer provision of § DWD 40.04(2)(b), but to discontinue his obligation regarding variable expenses.

■

¶ 14. Timothy argues that the court went beyond the bounds of its discretion when it failed to use the shared-time payer calculation. He argues, correctly, that the calculation of the presumptive child support obligation under Wis. Stat. § 767.25(1j) includes the

been eliminated and, most significantly, the note to § DWD 40.02(25) has been completely eliminated.

shared-time payer formula. *See Randall v. Randall*, 2000 WI App 98, ¶¶ 12–15, 235 Wis. 2d 1, 612 N.W.2d 737. However, the trial court has the discretionary authority to set aside the guideline percentages when it finds that the use of the presumptive child support amount "is unfair to the child or to any of the parties." Sec. 767.25(1m). A trial court is not required to apply the percentage guidelines in every case, but it must articulate its reasoning process for the decision to remain within the support guidelines or to deviate from them. *Luciani*, 199 Wis. 2d at 295. Although this trial court did not reference specific facts from the record in its written findings, it did assert that the child support order was "supported by the evidence" and based on the record. When a trial court does not explicitly state its reasons for a child support order, we may search the record for reasons to sustain the trial court's discretionary decision. *Randall*, 235 Wis. 2d 1, ¶ 7.

¶ 15.  At trial, the parties testified regarding the variable expenses incurred on behalf of the children. Notably, Amy testified that the children's variable expenses raised some issues and that there were monetary problems between the parties in this regard. Timothy testified that he did not always ask Amy to pay her share of the variable expenses. The record indicates that both parties treated the variable expenses obligation with some informality, and both admitted that at times they did not inform the other party of expenses they had incurred on behalf of the children.

¶ 16.  The trial court recognized the potential for future litigation over the variable expenses. It expressly referenced Amy's testimony when ruling that the problems inherent in ordering a sixty-four/thirty-six split of the variable expenses would be avoided if Timothy paid

616

the support guideline amount of twenty-five percent of his gross income and in return was relieved of any responsibility for the variable expenses. Although the court determined that "economically it may be to the benefit of [Timothy]" to order the standard child support percentage guideline and omit the variable expenses from the child support award, it recognized that Amy was willing to forego Timothy's contribution to variable expenses and observed that this arrangement would avoid future litigation over the exchange of money that a sixty-four/thirty-six split of variable expenses would likely produce. We will uphold the trial court's decision unless we determine that discretion was not exercised or there was no reasonable basis for the trial court's decision. *Wester v. Bruggink*, 190 Wis. 2d 308, 317, 527 N.W.2d 373 (Ct. App. 1994). In *Luciani*, 199 Wis. 2d at 295, our supreme court stated that the trial court can deviate from child support percentage guidelines when it finds that use of the guidelines "would be unfair to the children or either of the parties." Here, the trial court followed the standard guideline, but deviated from the shared-time payer formula, to craft a child support award it felt was fair to Timothy and Amy. We identify ample evidence to support the court's child support order and we conclude that the trial court reasonably exercised its discretion when imposing the standard child support percentage guideline and removing Timothy's obligation for variable expenses.

### Equivalent Care

¶ 17.  Timothy argues that he provides equivalent care for the children on Mondays and Tuesdays during the school year. He calculates that the added placement

results in approximately 160 annual overnights, or over forty-three percent of the total overnight placement.

¶ 18. Equivalent care is explained in a footnote to WIS. ADMIN. CODE § DWD 40.02(25):

> There are physical placement arrangements in which the payer provides child care beyond the threshold and incurs additional cost in proportion to the time he or she provides care, but because of the physical placement arrangement he or she does not provide overnight care (e.g. payer provides day care while the payee is working). Upon request of one of the parties the court may determine that the physical placement arrangement other than overnight care is the equivalent of overnight care.[4]

■

¶ 19. Timothy asserts that the trial court failed to consider or to analyze the issue of equivalent care, and that this failure constitutes an erroneous exercise of discretion. *See McCleary v. State*, 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1971) (There should be evidence in the record that discretion was exercised.). Although the proper exercise of discretion contemplates that the trial court will explain its reasoning, when it does not, we may search the record for facts that support the court's discretionary decision. *Randall*, 235 Wis. 2d 1, ¶ 7.

¶ 20. At trial, Timothy did not offer any testimony regarding expenses incurred or substantial care provided on days he had placement until 7:00 p.m. During Timothy's closing argument, he stated that his Monday and Tuesday afternoons during the school year should be considered the equivalent of overnight placements. The trial court was not persuaded by Timothy's

---

[4] This footnote was eliminated effective January 1, 2004. The current definition of "equivalent care" is found in WIS. ADMIN. CODE § DWD 40.02(10).

characterization of his weekday placements, stating that it "declines to afford any overnight equivalent to the placement exercised between [Timothy] and the minor children."

¶ 21. On appeal, Timothy argues that he provides equivalent care for the children on days he has placement until 7:00 p.m. and provides their evening meals. He calculates that while summer placement is equally divided, he provides more than half of the evening meals during the school year: Mondays, Tuesdays, Wednesdays and alternating weekends. Specifically, Timothy argues that "[t]he 'cost' of an overnight is the meal cost." Amy counters that Timothy has the children for only three and one-half hours on Mondays and Tuesdays and that this is not the equivalent of overnight care.

■

¶ 22. We agree with the trial court's conclusion that Timothy has not demonstrated that the Monday and Tuesday placement until 7:00 p.m. constitutes equivalent care. If the DWD had intended an evening meal to equate to an overnight equivalent, it could have advised as much in a note to this section. Instead, as the note to Wis. Admin. Code § 40.02(25) indicates, equivalent care must be something of substance.[5] Timothy's provision of an evening meal on days he has the children until 7:00 p.m. does not rise to the level of care envisioned by the DWD.

---

[5] The use of the words "day care" suggests that the DWD contemplated a situation where the payer parent provides care, or the financial cost of such care, for the children while the payee parent is working. The current definition also requires care that is "substantially equivalent" to the cost of overnight care. Wis. Admin. Code § DWD 40.02(10).

*Reduced Value of Retirement Assets
to Reflect Potential Tax Consequences*

¶ 23.  Timothy also challenges the trial court's decision to reduce the value of Amy's pension plan by twenty percent. He argues that there was no expert testimony regarding any potential tax consequences and therefore Amy's pension should have been incorporated into the property division at its actual current value. Amy responds that courts are allowed to consider tax consequences when making a property division under Wis. Stat. § 767.255(3)(k).

¶ 24.  We agree with Amy that property division rests within the sound discretion of the trial court. *See Ashraf v. Ashraf*, 134 Wis. 2d 336, 340, 397 N.W.2d 128 (Ct. App. 1986). We will not disturb the trial court's judgment unless there is an abuse of discretion. *Id.*[6] Furthermore, "[v]aluation of all assets, including the present value of a pension plan, is admittedly somewhat speculative." *Corliss v. Corliss*, 107 Wis. 2d 338, 344, 320 N.W.2d 219 (Ct. App. 1982). Accordingly, the trial court is afforded broad discretion in the valuation and division of retirement and pension rights. *Laribee v. Laribee*, 138 Wis. 2d 46, 52, 405 N.W.2d 679 (Ct. App. 1987).

¶ 25.  Timothy contends that the twenty percent reduction was arbitrary because there was no expert

---

[6] The terminology used when reviewing a trial court's discretionary act has been changed from "abuse of discretion" to "erroneous exercise of discretion" but the substance of the standard of review remains the same. *City of Brookfield v. Milwaukee Metro. Sewerage Dist.*, 171 Wis. 2d 400, 423, 491 N.W.2d 484 (1992).

testimony, no offer of proof, and no testimony from Amy regarding the potential tax consequences for her pension plan. However, in *Selchert v. Selchert*, 90 Wis. 2d 1, 9, 280 N.W.2d 293 (Ct. App. 1979), we stated that a tax of ten to twenty percent was "reasonable speculation." In *Ashraf*, there was expert testimony regarding potential tax consequences and the present value of the retirement assets of one of the parties. There we stated that "[g]iven such uncontradicted testimony, the trial court must either accept it or explain why it found the testimony improbable or the witness discredited." *Ashraf*, 134 Wis. 2d at 346. *Ashraf* therefore instructs us that when there is expert testimony, the court need not resort to "reasonable speculation." However, here, where no expert testimony was presented, the court may reasonably speculate as to the present value of retirement assets. *See Selchert*, 90 Wis. 2d at 9. The trial court reduced the value of Amy's retirement assets by twenty percent to reflect potential tax consequences and arrive at a fair representation of the present value of Amy's pension plan. In the absence of any expert testimony or other evidence to the contrary, the court may rely on its knowledge and experience to engage in reasonable speculation regarding the anticipated tax impact on the present value of retirement assets.

## *Property Division*

¶ 26. Timothy raises three issues concerning the property division. First, he challenges the trial court's refusal to credit him for payments he made toward the mortgage, payments he made on a loan from his 401(k), and contributions he made to his 401(k) during the pending divorce action. Second, he argues that he contributed $12,000 from a previous divorce settlement to improve the marital residence and that the property

division should reflect his contribution. Finally, he asserts that the court should have considered the parcel of land gifted by his parents as grounds for making an unequal division of property.

¶ 27. Valuation and division of the marital estate at divorce lie within the sound discretion of the trial court. *Garceau v. Garceau*, 2000 WI App 7, ¶ 3, 232 Wis. 2d 1, 606 N.W.2d 268. We will therefore uphold the trial court's valuation and division of property if we determine that the trial court considered the relevant facts, applied the proper standard of law, and used a rational process to reach a conclusion that a reasonable judge could reach. *Id.*

¶ 28. Here, the trial court determined that Timothy's mortgage payments were in lieu of rent and he was ordered to pay the mortgage because he continued to live in the residence. The court also held that Timothy's contributions to his 401(k) plan were voluntary and that the asset was "subject to division at the time of the divorce, not at the time of the separation." A marital estate is usually valued as of the date of the divorce. *Sommerfield v. Sommerfield*, 154 Wis. 2d 840, 851, 454 N.W.2d 55 (Ct. App. 1990). When conditions over which a party has little or no control arise, however, special circumstances can warrant deviation from the rule. *Id.* In our judgment, the facts of this case do not warrant the application of the exception. Timothy has not demonstrated any special circumstances to support deviation from the general rule that the property will be valued as of the date of the divorce. *See id.* We agree with the trial court that Timothy had the benefit of living in the residence and that no credit was due him in the property division at the time of the

divorce. This conclusion is supported by the facts and demonstrates a proper application of the law.

■

¶ 29.   Timothy makes similar arguments regarding his $12,000 contribution to the residence and the gifted parcel of land. Although he does not argue that these assets were individual property at the time of the divorce, he asserts that the court should have given him credit for the property he added to the marital estate. Timothy argues that under Wis. Stat. § 767.255(3)(b), the court should have deviated from the presumption of equal distribution of property. Again, the issue is one of discretion for the trial court. *See Garceau,* 232 Wis. 2d 1, ¶ 3. The record demonstrates that the trial court's findings of fact are supported by the testimony and documentary evidence presented at trial.[7] Furthermore, the court considered the factors under § 767.255(3), noting the long-term nature of the marriage, Timothy's $12,000 contribution, the parcel of land gifted by Timothy's parents, the economic value of each party's contribution to the marriage, and additional factors. Specifically, the trial court stated that Amy's role in helping to raise the children of Timothy's prior marriage "should be taken into account to a certain extent to balance out the amount of property that was brought to the marriage by [Timothy]." This is

---

[7] Timothy's parents gifted a parcel of land to Timothy and Amy as survivorship marital property. The warranty deed clearly states this was the intent of the grantors, and Timothy does not dispute this fact. With regard to the $12,000 contribution, Timothy testified that he was not positive about how the money was used, but thought that $7,000 went to pay off the home loan from his father and the rest was used to make additions to the house. Amy testified that the house was refinanced several times.

an appropriate exercise under § 767.255(3)(d), which allows the court to consider the economic value of a party's contribution to the marriage in homemaking and child care services.

¶ 30.   Timothy asks us to remand this matter with directions to the trial court to consider the $12,000 and gifted parcel of land in its division of property. We conclude that the trial court has already considered these matters and, as demonstrated by the record, appropriately exercised its discretion in valuing and dividing the property.

## CONCLUSION

¶ 31.   We conclude that the record contains ample evidence to support the trial court's child support order and that the trial court reasonably exercised its discretion when imposing the standard child support percentage guideline and removing Timothy's obligation for variable expenses. We further conclude that equivalent care credit is available only when the parent demonstrates that the care he or she is providing, while not overnight care, is something of substance. The provision of an evening meal does not rise to the level of equivalent care.

¶ 32.   We also conclude that in the absence of any expert testimony or other evidence to the contrary, the trial court may rely on its knowledge and experience to engage in reasonable speculation regarding the anticipated tax impact on the present value of retirement assets.

¶ 33.   Finally, we conclude that the trial court has properly exercised its discretion in the matter of the property division in this case.

*By the Court.*—Judgment affirmed.