COURT OF APPEALS
DECISION
DATED AND FILED

August 20, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1236**

Cir. Ct. No. 2019FA260

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

IN RE THE MARRIAGE OF:

ANDREW J. BAXTER,

PETITIONER-RESPONDENT,

V.

JESSICA L. BAXTER,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Chippewa County: JAMES M. ISAACSON, Judge. *Reversed and cause remanded with directions*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jessica Baxter appeals from an order supplementing the circuit court's previous property division and maintenance awards on her divorce from Andrew Baxter.[1] On appeal, Jessica asserts that her maintenance award should be higher based upon the court's stated intention to equalize the parties' income. Jessica also asserts that the court erred by failing to include, without explanation, some assets in the marital estate.

¶2 We conclude that the circuit court erroneously exercised its discretion in determining the amount of maintenance payable to Jessica and dividing the parties' property. Specifically, the court failed to adequately explain how it determined the amount of maintenance awarded to Jessica, and on our review of the record, we cannot find a basis for the amount awarded. The court similarly failed to make any factual findings supporting its decision to exclude certain vehicles from the marital estate. We therefore reverse the portions of the court's order setting Andrew's maintenance obligation and the equalization award. We remand with instructions for the court to explain how it reached the maintenance award, or alternatively, to recalculate the maintenance award to reflect an amount that is actually equalized, along with an explanation of how it arrived at that amount. We further remand with directions for the court to reconsider whether the vehicles at issue were properly excluded, and if not, to determine their fair market value.

---

[1] Because the parties share a surname, we refer to them by their first names throughout the remainder of this opinion.

**BACKGROUND**

¶3      The parties married in April 2000 and had two children together.[2] Andrew filed for divorce in October 2019.

¶4      A final contested divorce hearing took place in December 2020, at which the primary issues were property division and maintenance.  Following testimony from the parties and other witnesses, the circuit court orally granted a judgment of divorce but reserved ruling on the contested issues until the parties submitted further evidence and briefed the issues.[3]

¶5      After a hearing and briefing, the circuit court addressed the contested issues in a written decision on April 13, 2021.  The court ordered Andrew to pay Jessica $1,200 per month in maintenance for ten years, specifically saying that it was doing so in "an attempt to equalize their income."  The court also divided the parties' assets and debts, and it ordered Andrew to make an equalization payment of $33,764 to Jessica.  The court entered another order on April 29, 2021, concerning the refinancing of a vehicle loan and a mortgage on the parties' home. The April 29 order also stated that the court would entertain motions for reconsideration and clarification of prior orders.

¶6      Jessica and Andrew filed separate motions for reconsideration of the circuit court's April 13 and 29, 2021 decisions.  Andrew argued for an amendment to the initial asset and debt division.  Conversely, and as relevant to this appeal,

---

[2] By the time the judgment of divorce was entered, both children had reached the age of majority.

[3] The court memorialized these rulings in a January 2021 judgment.

Jessica argued that Andrew should be required to pay additional maintenance in order to fully account for Andrew's higher income. Jessica also argued that she was entitled to a greater equalization payment because the court included some, but not all, of Andrew's vehicles in its property division analysis, despite the fact that Jessica had established the existence of those vehicles.[4]

¶7    In August 2021, the circuit court entered a written "decision on motion to reconsider," addressing Andrew's motion by reducing the debts assigned to Jessica and amending the equalization payment to reflect the reduced debts. This resulted in a reduced equalization payment due to Jessica in the amount of $1,661.25. The August decision did not address Jessica's motion for reconsideration. Jessica sent a letter to the court in November 2021 requesting that it address, among other things, her motion for reconsideration of the April 13, 2021 decision as it related to the property division and the vehicles.

¶8    A hearing was held to address the remaining issues between the parties, including Jessica's motion for reconsideration. With respect to the property division and the vehicles, the circuit court denied Jessica's motion for reconsideration in a December 2021 written order. The court did not address Jessica's motion for reconsideration of the maintenance award.

¶9    Afterward, the parties further litigated a number of remaining issues—none relevant to this appeal—including allocating medical bills and loans. The circuit court issued a supplemental decision addressing the remaining issues

---

[4] One of the "vehicles" that Jessica claims Andrew owns is actually a trailer. For simplicity's sake, and in line with the parties' briefing, we refer to all of Andrew's alleged unaccounted for items as "vehicles."

in March 2022. In May 2022, the court issued amended findings of fact and a supplemental order that incorporated the March 2022 decision into the April 13, 2021 decision. Ultimately, the court ordered Andrew to make an equalization payment of $3,852.92 to Jessica. Andrew's maintenance obligation remained at $1,200 per month.

¶10 Jessica now appeals from the May 2022 order. Additional facts will be provided below as necessary.

## DISCUSSION

### I. Maintenance

¶11 Jessica first argues that the circuit court erroneously exercised its discretion by ordering Andrew to pay her $1,200 per month in maintenance. Jessica contends that if the court truly intended to "equalize" the parties' income, the maintenance award should be $1,408 per month.

¶12 Upon issuing a judgment of divorce, a circuit court "may grant an order requiring maintenance payments to either party for a limited or indefinite length of time … after considering all of the" factors enumerated in WIS. STAT. § 767.56(1c)(a)-(j) (2021-22),[5] including the length of the marriage, the division of property, the earning capacity of the party seeking maintenance, and "[s]uch other factors as the court may in each individual case determine to be relevant." *Id.* "These factors reflect and are designed to further the two primary objectives of maintenance—'to support the recipient spouse in accordance with the needs and

---

[5] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

earning capacities of the parties' and 'to ensure a fair and equitable financial arrangement between the parties.'" ***Ladwig v. Ladwig***, 2010 WI App 78, ¶17, 325 Wis. 2d 497, 785 N.W.2d 664 (citation omitted).

¶13     The determination of maintenance in a divorce action is a decision entrusted to the discretion of a circuit court and it is "not disturbed on review unless there has been an erroneous exercise of discretion." ***LeMere v. LeMere***, 2003 WI 67, ¶13, 262 Wis. 2d 426, 663 N.W.2d 789.    "A circuit court's discretionary decision is upheld as long as the court 'examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach.'" ***Id.*** (citation omitted). "A circuit court erroneously exercises its discretion if it makes an error of law or neglects to base its decision upon facts in the record." ***Id.***, ¶14 (citation omitted).

¶14     The circuit court "assumed" that Andrew's annual income was $112,619 and Jessica's income was $58,920.[6]  The court stated that the $1,200 per month awarded to Jessica for maintenance was based upon "an attempt to equalize [the parties'] income" after it considered the following facts: the parties were married for nearly twenty years; Jessica "was the parent primarily responsible for the custodial duties in raising two children during which time she was, if not completely out of the workforce, … employed at entry level employment earning entry level income"; and Jessica, even with a registered nurse license, "will likely not ever achieve the income level of [Andrew] or become self supporting at a

---

[6] The circuit court found that Andrew "earns more than he disclosed…. Probably substantially more." However, the court stated that Jessica "could not prove up an exact number" and that it would not "speculate" as to Andrew's actual income. Neither party on appeal challenges the income figures relied upon by the court. We will therefore assume, without deciding, that the court correctly relied upon the stated income figures.

standard of living the parties enjoyed while married." The court ordered Andrew to pay the maintenance award for ten years to allow Jessica "time to pursue a specialty if she chooses where she may be able to earn more income." Neither party challenged, or challenges on appeal, the court's finding that a maintenance award for a period of ten years was appropriate under these circumstances.

¶15 Using a tax software program—TaxCalc21—Jessica argued in her motion for reconsideration that to "equalize" the parties' incomes, the circuit court would need to order Andrew to pay maintenance of $1,408 per month. This figure represents the equalization of the parties' "net spendable income."

¶16 Andrew does not dispute that the $1,408 per month figure would constitute an equalization of the parties' incomes after taxes were considered. Rather, he argues that circuit courts are permitted to use "many methodologies" to achieve equalization. According to Andrew, "within each of those methodologies, there is variability depending on what assumptions the person using the program inputs, such as tax elections." Andrew states that a monthly award of $1,200, which would result in a "2% deviation from a 50% award, is not a clearly erroneous award of maintenance."

¶17 A circuit court must "illuminate its reasoning in reaching" a maintenance award. *Bahr v. Bahr*, 107 Wis. 2d 72, 84, 318 N.W.2d 391 (1982). Here, the circuit court considered the factors listed in WIS. STAT. § 767.56(1c) and determined that without maintenance, Jessica would not be able to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage. *See Ladwig*, 325 Wis. 2d 497, ¶17.

¶18 Critically, however, the circuit court failed to provide any explanation for how it arrived at the $1,200 per month figure from the parties'

incomes. In *Ladwig*, the circuit court calculated maintenance using the "Mac Davis computer program," which "makes necessary tax calculations, such as after-tax income and the effect of tax exemptions." *Id.*, ¶29 & n.15. Although the court's maintenance decision articulated how it reached the maintenance award figure, it did not provide its reasoning for awarding one spouse both dependency exemptions or for not accounting for real estate tax deductions. *Id.*, ¶31. This court remanded with directions for the circuit court to reconsider these issues because it failed to articulate its reasoning regarding the same. *Id.*

¶19     As in *Ladwig*, the circuit court's reasoning here does not permit us to determine how the court calculated the maintenance award figure. The record does not demonstrate whether the court considered the parties' tax consequences and elections—such as through the use of a Mac Davis or TaxCalc21 computer program—or whether it based the figure on some other variable or methodology. Although we are permitted to search the record for evidence supporting a circuit court's discretionary decision, *see Randall v. Randall*, 2000 WI App 98, ¶7, 235 Wis. 2d 1, 612 N.W.2d 737, after doing so, we are unable to determine why $1,200 per month in maintenance payable to Jessica constitutes an equalization of the parties' income, or how that amount meets the fairness and support objectives for an award of maintenance. *See Bahr*, 107 Wis. 2d at 82; *Steinke v. Steinke*, 126 Wis. 2d 372, 388, 376 N.W.2d 839 (1985). We therefore reverse the portion of the court's order setting Andrew's maintenance obligation and remand with instructions for the court to either explain how it reached the $1,200 per month figure, or, alternatively, to recalculate the maintenance award to reflect an amount

that is actually equalized, along with an explanation of how it arrived at that amount.[7]

## II. Property division

¶20    Jessica next contends that the circuit court erred by dividing the parties' property without including, or explaining why it was not including, twelve vehicles in the marital estate.[8]

¶21    Upon every judgment of divorce, a circuit court "shall divide the property of the parties." WIS. STAT. § 767.61(1).  Section 767.61(2)(a) "identifies property that is subject to division by describing the limited types of property that generally are not subject to division on divorce." *McReath v. McReath*, 2011 WI 66, ¶23, 335 Wis. 2d 643, 800 N.W.2d 399.

¶22    "The general rule is that assets and debts acquired by either party before or during the marriage are divisible upon divorce." *Derr v. Derr*, 2005 WI App 63, ¶10, 280 Wis. 2d 681, 696 N.W.2d 170 (formatting altered).  A circuit court "shall presume that all property not described in [WIS. STAT. § 767.61(2)(a)]

---

[7] Jessica asks this court "to correct the [circuit court's] error and determine that the appropriate amount of maintenance … is $1,408 per month."  However, as Andrew points out and as is evident from the issue presented here, there are different methods by which a court may equalize the parties' income.  Thus, we refuse to amend the maintenance amount when the original amount may not simply stem from a mathematical error. *See Schinner v. Schinner*, 143 Wis. 2d 81, 100 & n.10, 420 N.W.2d 381 (Ct. App. 1988) (modifying to a specific amount a portion of a circuit court's equalization award because that portion of the judgment resulted from an easily traceable mathematical error).

[8] These vehicles included:  (1) a 2014 Chevrolet Camaro; (2) a 2000 BMW 323 CI; (3) a blue 2015 Chevrolet Impala LTZ; (4) a 2007 Chevrolet K2500 Silverado; (5) an unknown color 2015 Chevrolet Impala LTZ; (6) a 2013 Chevrolet K2500 Silverado; (7) a 2013 GMC Sierra; (8) a 2017 Chevrolet K1500 Silverado; (9) a 2004 Chevrolet Trailblazer; (10) a black 2015 Chevrolet Impala LTZ; (11) a 1998 United Express Line trailer; and (12) a 2006 ATV.

is to be divided equally between the parties." Sec. 767.61(3). "When a party to a divorce asserts that property, or some part of the value of property, is not subject to division, that party has the burden of showing that the property is non-divisible at the time of the divorce." *Derr*, 280 Wis. 2d 681, ¶11.

¶23 In addition,

> any asset with a fair market value of $500 or more that would be considered part of the estate of either or both of the parties if owned by either or both of them at the time of the action and that was transferred for inadequate consideration, wasted, given away, or otherwise unaccounted for by one of the parties within one year prior to the filing of the [divorce] petition … is rebuttably presumed to be property subject to division under [WIS. STAT. §] 767.61 and is subject to the [financial] disclosure requirement of [WIS. STAT. §] 767.127.…

WIS. STAT. § 767.63. "WISCONSIN STAT. § 903.01 describes … how presumptions are handled in civil cases." *Bonstores Realty One, LLC v. City of Wauwatosa*, 2013 WI App 131, ¶8, 351 Wis. 2d 439, 839 N.W.2d 893. It states:

> Except as provided by statute, a presumption recognized at common law or created by statute, including statutory provisions that certain basic facts are prima facie evidence of other facts, imposes on the party relying on the presumption the burden of proving the basic facts, but once the basic facts are found to exist the presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence.

Sec. 903.01.

¶24 Classifying property as divisible or non-divisible "involves both fact finding and legal questions." *Derr*, 280 Wis. 2d 681, ¶10. Conversely, the allocation of divisible property is left to the sound discretion of a circuit court, *McReath*, 335 Wis. 2d 643, ¶21, and the "determination of the value of an asset of

the marital estate is a finding of fact," ***Preuss v. Preuss***, 195 Wis. 2d 95, 107, 536 N.W.2d 101 (Ct. App. 1995).

¶25 Throughout the divorce action, Jessica accused Andrew of not fully disclosing his ownership of several vehicles, twelve of which are at issue on appeal. *See* WIS. STAT. § 767.127. She also accused him of violating a stipulated temporary order prohibiting the sale of assets during the pendency of the divorce and of violating a scheduling order requiring the parties to disclose all vehicle ownership. *See* WIS. STAT. § 767.117(1)(b).

¶26 The circuit court found that there was a "shell game" going on and that Andrew's testimony at the final contested hearing regarding the vehicles was "incredible." The court also noted that Jessica was unreasonably "shooting at the moon and hoping to get the stars." Ultimately, in its April 13, 2021 order, the court assigned a number of vehicles to Andrew in the property division, but it did not include in the property division any of the twelve vehicles at issue here. The court did include in the property division a camper and a red 2015 Chevrolet Impala, which Andrew stated he purchased using the funds from the sale of vehicle 1. *See supra* n.8. The court stated that it was "convinced" Andrew "owns more [vehicles] than he disclosed" but that Jessica failed to "prove up an exact number." The court did not expressly address WIS. STAT. §§ 767.61 or 767.63.

¶27 On appeal, Jessica argues that the circuit court erred by not including the twelve vehicles in the property division because she made a prima facie showing that the vehicles "were in Andrew's name and now unaccounted for." *See* WIS. STAT. § 767.63. She argues that the "burden then shifted to Andrew, as the person in control of the evidence, to provide the necessary evidence to rebut that presumption."

¶28    Andrew does not dispute that the twelve vehicles at issue would be subject to property division as part of the parties' marital estate pursuant to WIS. STAT. §§ 767.61 and 767.63. Rather, Andrew contends that "the record includes more than sufficient support to affirm the [circuit] court's decision" not to include the vehicles, however Andrew fails to identify any evidence supporting the court's decision to exclude the twelve vehicles.

¶29    We agree with Jessica that the circuit court erroneously exercised its discretion by failing to make factual findings regarding why it excluded the twelve vehicles from the parties' property division. As Andrew concedes, Jessica made a prima facie showing that the twelve vehicles should be included in the marital estate. This showing included numerous official records, private investigator testimony, and her own testimony and, contrary to the court's finding, included evidence beyond speculation.

¶30    Specifically, at the final contested hearing, there was substantial testimony regarding the alleged ownership of the vehicles. A private investigator testified at the hearing that he was hired by Jessica to locate vehicles owned by Andrew. The investigator compiled a list of vehicles titled in Andrew's name, including all but one of vehicles at issue on appeal, using a database and Division of Motor Vehicles (DMV) records. Jessica submitted specific DMV documents for vehicles 3, 4, 8, and 9, and she also submitted estimated values for each of the twelve vehicles based on the Kelley Blue Book; all of the vehicles were valued at over $500.

¶31     Further, Jessica introduced evidence that vehicles 2, 3, and 8-11 were titled to and/or insured by Andrew during the marriage and prior to the judgment of divorce in December 2020.[9]  *See* WIS. STAT. § 767.61; ***Derr***, 280 Wis. 2d 681, ¶10.  Jessica also introduced a 2018 loan application, which listed vehicle 12 and valued it at $1,000.  Moreover, Andrew conceded that he owned vehicle 1 and sold it in June 2020.

¶32     Jessica also introduced evidence that vehicles 4-7 were titled to Andrew but were transferred within one year prior to October 2019.  *See* WIS. STAT. § 767.63.  Not only were vehicles 4-7 not disclosed, they were potentially sold for far less than their actual value.  Andrew testified that he sold six vehicles in the two years preceding the final hearing for roughly $5,000 in total.  The circuit court found it "[i]ncredible that [Andrew] would expect the court to believe that he has flipped vehicles valued at $113,000.00 within the 12 months of filing this action for divorce but [did] not hav[e] any funds to show for it."  Contrary to the court's reasoning, the mere fact that Jessica could not prove the "exact number" of vehicles owned by Andrew is not a sufficient reason for the court's failure to avoid including in the property division the twelve vehicles Jessica did demonstrate were owned by Andrew.

¶33     Furthermore, we note that the circuit court could not ignore the twelve vehicles at issue when defining the marital estate simply because it was

---

[9] On appeal, Jessica argues that vehicle 8 was transferred within one year prior to the action for divorce.  However, DMV records submitted into evidence show that the vehicle's title was transferred in November 2019, one month after the action was commenced.  Therefore, vehicle 8 would not fit within the period provided for in WIS. STAT. § 767.63, but it would still presumptively be considered marital property under WIS. STAT. § 767.61 because it was acquired during the marriage.

difficult to assess a precise value for each vehicle. Although assigning the vehicles a value might prove to be a difficult task given Andrew's lack of cooperation—including his failure to provide records of vehicle purchases and sales—"[t]he fact that an asset is impossible to value on the day of divorce … is not sufficient reason to ignore the asset when dividing the marital estate." *See Weiss v. Weiss*, 122 Wis. 2d 688, 697, 365 N.W.2d 608 (Ct. App. 1985); *see also Lellman v. Mott*, 204 Wis. 2d 166, 173, 554 N.W.2d 525 (Ct. App. 1996) ("The fact that [the petitioner] by his deliberate conduct frustrated an accurate calculation of his net income … does not preclude the [circuit] court from making the appropriate finding of fact."). Indeed, the "[v]aluation of all assets … is admittedly somewhat speculative." *Rumpff v. Rumpff*, 2004 WI App 197, ¶24, 276 Wis. 2d 606, 688 N.W.2d 699 (alteration in original; citation omitted). As Jessica contends on appeal, "there was evidence from which the court could conclude that the vehicles should be in the marital estate and [could determine] their value."

¶34 Once Jessica made a prima facie case regarding the existence of the vehicles and their values, the burden shifted to Andrew to show why the vehicles should not be included in the marital estate, or if included, why the vehicle values proffered by Jessica were incorrect. *See* WIS. STAT. § 903.01. The circuit court never found that Andrew rebutted the presumption that the vehicles were required to be included in the marital estate for property division purposes. In fact, as outlined previously, the court found that Andrew's testimony surrounding the vehicles was "incredible."

¶35 Here, the circuit court did not make any findings as to why it did not include the twelve vehicles in the marital estate.[10] Absent such findings, we are unable to assess whether the court properly excluded the vehicles from the parties' property division. *See* ***Douglas L. v. Arika B.***, 2015 WI App 80, ¶18, 365 Wis. 2d 257, 872 N.W.2d 357; ***Derr***, 280 Wis. 2d 681, ¶10. We therefore reverse the circuit court's equalization award and remand for the court to make factual findings regarding whether the twelve vehicles at issue should be included in the property division, and if so, their fair market values.[11]

¶36 Finally, Jessica argues that the circuit court erroneously exercised its discretion by valuing Andrew's camper at $3,200. Although the court found that Andrew's testimony regarding the vehicles was not credible, that finding did not necessarily extend to every single part of Andrew's testimony, as Jessica suggests. Andrew testified that he purchased the camper for $3,200 and that it was priced so

---

[10] Andrew argues that we may search the record for reasons to support the circuit court's property division award. Jessica asks this court to conclude that Andrew failed to rebut the presumption that the vehicles are part of the marital estate and then assign values to the assets in question. The issue here is whether the vehicles were divisible property—a question of law that depends on factual findings. *See* ***Derr v. Derr***, 2005 WI App 63, ¶10, 280 Wis. 2d 681, 696 N.W.2d 170. The record before us lacks the necessary factual findings for this court to determine if the divisible assets were accurately selected. *See* ***Douglas L. v. Arika B.***, 2015 WI App 80, ¶18, 365 Wis. 2d 257, 872 N.W.2d 357 ("Without any facts on which to base our de novo determination, we are unable to make any determination whatsoever."); ***Vier v. Vier***, 62 Wis. 2d 636, 639, 215 N.W.2d 432 (1974) ("[W]hen there is a failure to make a finding of fact, this court on appeal may … remand for the making of findings and conclusions."). Although Andrew argues that the "record is bursting with examples of an overwhelming abundance of arguments and evidence received by the court about these vehicles," he points to no such evidence supporting the court's decision to include some vehicles but not others. Thus, we refuse both parties' requests to make the missing factual findings on appeal.

[11] To the extent the circuit court included the camper and the red 2015 Chevrolet Impala, but not vehicle 1 (because Andrew purchased the former vehicles using the funds from the sale of the latter vehicle), the court must articulate how it reached that decision. Specifically, the court should explain why it valued vehicle 1 at an amount equal to, rather than higher or lower than, the combined value of the camper and the red 2015 Chevrolet Impala.

low because it had a salvaged title and flood damage. This testimony was corroborated through an exhibit introduced into evidence showing that the camper's title stated "rebuilt salvage, flood damage." Accordingly, the court's finding that the value of the camper was lower than Jessica suggested is not clearly erroneous. *See Preuss*, 195 Wis. 2d at 107.

*By the Court.*—Order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.