IN RE THE PATERNITY OF W. B.:

DOUGLAS L.,
Petitioner-Appellant-Cross-Respondent,

v.

ARIKA B.,
Respondent-Respondent-Cross-Appellant.

Court of Appeals

*No. 2014AP2656. Submitted on briefs June 30, 2015.
—Decided September 29, 2015.*

2015 WI App 80

(Also reported in 872 N.W.2d 357.)

On behalf of the petitioner-appellant-cross-respondent, the cause was submitted on the briefs of *Melissa Petersen* of *Petersen Law Firm, L.L.C.*, Hager City.

On behalf of the respondent-respondent-cross-appellant, the cause was submitted on the brief of *Jonathan B. Lundeen* of *Mudge, Porter, Lundeen & Seguin, S.C.*, Hudson.

Before Stark, P.J., Hruz, J., and Thomas Cane, Reserve Judge.

¶ 1. CANE, J. Douglas L. appeals an order dismissing, without prejudice, his petition to determine paternity. Douglas argues the circuit court erroneously concluded that a paternity determination was not in the best interest of the child. Arika B. cross-appeals,

arguing the petition should have been dismissed with prejudice. We reject Arika's argument and conclude the circuit court was authorized to dismiss the petition without prejudice. However, the court set forth no factual findings underlying its decision. Because the WIS. STAT. § 767.863(1m)[1] best-interest-of-the-child determination is subject to de novo review, we are unable to address Douglas's argument. Accordingly, we affirm in part; reverse in part, and remand with directions to make detailed factual findings.

## BACKGROUND

¶ 2. Arika was married during all times relevant to this case. However, she moved out of the marital home for a period, during which she entered into a relationship with Douglas. During that relationship, Arika became pregnant. She ended the relationship with Douglas and moved back in with her husband approximately three months prior to giving birth. Twenty days after the birth, Douglas petitioned for a paternity determination, alleging he was the father.

¶ 3. At the first court appearance, Arika objected to the testing under WIS. STAT. § 767.863(1m), because the child was born into a marriage. The circuit court appointed a guardian ad litem (GAL) and set a pretrial hearing to determine whether it would be in the child's best interest to determine paternity.

¶ 4. A hearing was held on September 29, 2014, at which Douglas, Arika, and her husband testified. Douglas testified he and Arika had planned for the baby together by shopping, picking out a car seat, and talking about expenses. He claimed he had attempted

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

to arrange to visit the child at least a dozen times, but Arika would not answer his phone calls.

¶ 5. Arika testified that Douglas was introduced to and had spent time with her two other children when she had them on weekends, and that the four of them spent time with Douglas's family on five or six occasions while they were dating. However, Arika testified she had been "advised against" allowing Douglas to see the newborn child and did not allow such contact, and she never asked Douglas for financial or emotional support. She further testified she was concerned about Douglas's marijuana use. Arika explained she had separated from her husband because he had a drinking problem, she got pregnant when they were young and "hadn't necessarily established a friendship," and they "fought a lot." When asked whether the drinking was still a concern, she responded:

> He has decided that our family is more important than his drinking and that he wants us to stay an intact family. He doesn't think that he needs to depend on alcohol like he did before. And we just—it—we don't fight when he doesn't drink. There's no fighting in our house at all. So he decided that our family is better this way.

¶ 6. However, Arika acknowledged that her husband never sought treatment and she never sought counseling. Her husband also testified he never sought treatment or counseling for his drinking problem, explaining, "[I d]idn't feel I needed to. I felt that if I—I really wanted to quit I would quit." He asserted he no longer went to bars or drank to the point of intoxication, but he still "occasionally" had "one, two, beers and that's it."

261

¶ 7. At the close of testimony, the GAL opined it would be in the child's best interest to allow genetic testing. The GAL emphasized there was no guarantee Arika and her husband would remain as an intact family, given their recent two-year separation. Following argument of counsel, the court ruled as follows:

> Well, I have carefully listened to the testimony and the recommendation of the GAL. Frankly, before this afternoon I had no idea that the statute existed. I have never dealt with this before. And I doubt if many attorneys have. I haven't even heard of it. My inclination would have been similar to [the GAL's]. But listening to the testimony I do believe now that any judicial determination of who the father is would not be in the best interest of [the child]. And so the action is dismissed, but it is without prejudice, specifically because of a potential change of circumstances as alluded to by [Douglas's attorney].

> And if their intact marriage dissolved I certainly can see [Douglas] stepping in here. But as is I see the benefit—this is sort of the way it would have been done 50 years ago or 100 years ago or whatever. There's a lot of this stuff that happened and the intact family stayed together and people went on their own separate ways and had their own lives. Genetic testing has changed that. But I don't believe they have overcome this presumption.

> So I will agree with—this is over the objection of [the GAL]. I agree that it would not be in the child's best interest to genetically determine who the father was.

Douglas now appeals, and Arika cross-appeals.

## DISCUSSION

¶ 8. Douglas's and Arika's respective appeals each concern Wis. Stat. § 767.863(1m), titled, "PATERNITY

ALLEGATION BY MALE OTHER THAN HUSBAND; WHEN DETERMINA-
TION NOT IN BEST INTEREST OF CHILD[,]" which provides:

> In an action to establish the paternity of a child who
> was born to a woman while she was married, if a male
> other than the woman's husband alleges that he, not
> the husband, is the child's father, a party may allege
> that a judicial determination that a male other than
> the husband is the father is not in the best interest of
> the child. If the court . . . determines that a judicial
> determination of whether a male other than the hus-
> band is the father is not in the best interest of the
> child, no genetic tests may be ordered and the action
> shall be dismissed.

*Whether genetic testing is in best interest of the child*

¶ 9. We first address Douglas's argument that
the circuit court erroneously determined it was not in
the child's best interest to order genetic testing and
dismissed the action. Ultimately, our holding on this
issue is dictated by the standard of review.

¶ 10. A history of the applicable standard of
review is in order. In 1930, our supreme court reviewed
a trial court's determination of a child's best interest in
an adoption proceeding. *See Cockroft v. Ulrich*, 201
Wis. 642, 231 N.W. 158 (1930). The supreme court
observed that the trial court had "fully appreciated the
nature of the issues and applied the proper rules of law
in arriving at [its] determination." *Id.* at 643. It then
held, "We regard the matter as involving purely a
question of fact. The trial court having found in favor of
the petitioners . . ., its finding under the facts disclosed
by the evidence in this case cannot be set aside." *Id.* at
645.

¶ 11. However, *Cockroft* was abrogated in a sub-
sequent adoption case, where the supreme court
stated:

> As a conclusion of law, the [trial] court stated "the best interests of the child will be promoted by denying the petition . . . ." The trial court considered the determination of the best interests of the child to be a question of law, and we agree. Language to the contrary in [*Cockroft*], which states it to be a question of fact is withdrawn.

*Shehow v. Plier*, 60 Wis. 2d 540, 548, 210 N.W.2d 865 (1973) (ellipsis in original). The supreme court felt the trial court had given too much or too little weight to certain factors. *Id.* at 552, 556. Ultimately, the court held, "Considering all the factors discussed, we conclude the adoption of this child by his grandparents is in his best interests and the court was in error in not so concluding." *Id.* at 556.

¶ 12. Two years later, in another adoption case, *Young v. Alderson*, 68 Wis. 2d 64, 227 N.W.2d 634 (1975), the supreme court attempted to clarify the standard of review, but it then contradicted itself. Ultimately, *Young* is the genesis of the current standard of review applicable to best-interest-of-the-child determinations in paternity actions.

¶ 13. The *Young* court first stated:

> In adoption cases the paramount consideration is the best interests of the child. In [*Shehow*] we stated that the determination of the best interests of the child by the trial court is a question of law. This is only partially true. The finding is a mixed question of fact and law. There are certain determinations of historical facts which must be sustained unless they are clearly against the great weight and clear preponderance of the evidence. The determination of where the best interests of the children lie is thus a question of fact in the sense that precise determinations must be made about specific factors such as age, finances of the parties, discipline questions, and psychological factors.

264

The application of the correct standards for determining the best interests of the child and the ultimate conclusion of where the best interests of the children lie is a matter for legal determination by the trial court, reviewable as such on appeal.

*Id.* at 69 (footnotes omitted).

¶ 14. However, after discussing at length various factors bearing on the best-interest determination, the *Young* court then stated:

In questions involving the determination of what is in the best interests of the children, whether in an adoption case or a divorce case, it must be recognized that the trial court has the chance to observe the conduct and demeanor of the witnesses, and its determination of the question of what is in the best interests of the children may not easily be overturned by this court. Thus, in *Larson v. Larson,* [30 Wis. 2d 291, 296, 140 N.W.2d 230 (1966),] a divorce case, we said:

This court is firmly committed to the principle that the findings of fact and orders of the trial court concerning the custody of minor children in divorce actions will not be set aside or reversed unless clearly against the great weight and clear preponderance of the evidence, or unless there is a clear abuse of discretion.

Custody matters are highly discretionary and the rule is well established that the trial court's determination will not be upset in the absence of a clear abuse of discretion. *Belisle v. Belisle,* 27 Wis. 2d 317, 321, 322, 134 N.W.2d 491 (1965).

As has been repeatedly held by this court, the matter of the custody of children in divorce actions is a matter peculiarly within the jurisdiction of the trial court, who has seen the parties, had an opportunity to observe their

> conduct, and is in much better position to determine where the best interests of the child lie than is an appellate court. *Adams v. Adams*, 178 Wis. 522, 525, 190 N.W. 359 (1922); *Hamachek v. Hamachek*, 270 Wis. 194, 202, 70 N.W.2d 595 (1955).

*Id.* at 74 (internal quotation marks and footnote omitted). Then, consistent with this second quotation from *Young*, but contrary to the first quotation, the supreme court held:

> We conclude that the Youngs have not sustained this burden [to prove the adoption would be in the best interest of the child] and that the trial court did not abuse its discretion in denying their adoption petition.
>
> . . . .
>
> The trial court carefully considered all of the relevant factors and we conclude that it did not err in determining that granting the adoption petition by the Youngs was not in the best interests of [the children].

*Id.* at 75.[2] Thus it would appear the *Young* court initially said one thing as to the standard of review applicable to the best-interest-of-the-child determination, but it then said and did another.

¶ 15. Perhaps because of its internal inconsistency, the 1975 *Young* decision has not been cited in many published opinions. We note, however, that the supreme court did so five years later in another adop-

---

[2] Consistent with the majority's application of a discretionary standard of review, the dissenting opinion commenced, "I respectfully dissent from the majority opinion. In my opinion the trial court either legally abused its discretion or did not properly exercise its discretion in denying the petition for adoption . . . ." *Young v. Alderson*, 68 Wis. 2d 64, 76, 227 N.W.2d 634 (1975) (Day, J., dissenting).

tion case, *Brandt v. Witzling*, 98 Wis. 2d 613, 297 N.W.2d 833 (1980). There, the court adopted *Young's* discretionary standard for best-interest determinations, quoting it at length and citing additional cases. *Id.* at 618–19. This would seem to have settled the matter.

¶ 16. Nonetheless, in a 1990 paternity case involving a prior version of the statute at issue here, this court stated, "The ultimate conclusion of where the best interests lie is a matter of law, which we review de novo. [*Young*], 68 Wis. 2d at 69[.]" *W.W.W. v. M.C.S.*, 156 Wis. 2d 446, 461–62, 456 N.W.2d 899 (Ct. App. 1990), *aff'd*, 161 Wis. 2d 1015, 468 N.W.2d 719 (1991). In its subsequent decision, our supreme court likewise stated, "The ultimate conclusion of the best interest of the child, however, is a matter of law which we review without deference to the circuit court. [*Young*], 68 Wis. 2d at 69[.]" *W.W.W.*, 161 Wis. 2d 1015, 1037. Accordingly, the court made a de novo best-interest-of-the-child determination based on the paper record before it. *Id.* at 1040.

¶ 17. The parties agree that the de novo standard of review set forth in the *W.W.W.* cases is applicable here. However, we believe those cases are an anomaly; they overlook the circuit court's superior ability to assess the evidence and parties before it, and they are inconsistent with cases holding that the best-interest-of-the-child determination in various contexts is left to the trial court's discretion and is subject to the deferential, erroneous-exercise-of-discretion standard of review. *See F.R. v. T.B.*, 225 Wis. 2d 628, 637, 639, 593 N.W.2d 840 (Ct. App. 1999) (best-interest determination "is left to the discretion of the trial court" in cases involving grandparent visita-

267

tion, termination of parental rights, and modification of custody and placement); *see also Randy A.J. v. Norma I.J.*, 2004 WI 41, ¶ 31, 270 Wis. 2d 384, 677 N.W.2d 630 (in case involving similar paternity statute, "deem[ing]" the circuit court's best-interest determination "very significant"). Further, neither *W.W.W.* case acknowledges, much less intentionally abandons, the discretionary standard that had been ultimately adopted and applied in *Young* and *Brandt*. However, we lack authority to overrule published decisions and are consequently bound to apply them. *Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997).

■

¶ 18. Accordingly, we apply the most recently applied standard of review for best-interest determinations in paternity proceedings set forth in *W.W.W.*, 161 Wis. 2d at 1037. This requires that we accept the circuit court's factual findings unless clearly erroneous but determine the child's best interest de novo. *Id.* As shown, *supra* ¶ 7, the circuit court here did not set forth any findings of fact or identify what evidence it relied on to make its determination that genetic testing would not be in the child's best interest. A circuit court may reject even uncontroverted testimony of a witness or may choose to believe some assertions and disbelieve others, *State v. Kimbrough*, 2001 WI App 138, ¶ 29, 246 Wis. 2d 648, 630 N.W.2d 752, and the court of appeals cannot make factual findings, *W.W.W.*, 156 Wis. 2d at 461. Without any facts on which to base our de novo determination, we are unable to make any determination whatsoever.[3] We therefore must re-

---

[3] If the best-interest-of-the-child determination was instead treated as a matter of circuit court discretion, a remand for fact finding would likely be unnecessary. *See Hughes v. Hughes*, 223 Wis. 2d 111, 120, 588 N.W.2d 346 (Ct. App. 1998)

mand for the circuit court to make explicit, detailed findings of fact sufficient to enable this court to independently determine whether genetic testing is in the child's best interest.[4]

*Whether the circuit court could dismiss the petition without prejudice*

¶ 19. WISCONSIN STAT. § 767.863(1m) provides that if a court determines genetic testing is not in the child's best interest, "the action shall be dismissed." Arika argues any such dismissal must be entered with prejudice.

██

¶ 20. Statutory interpretation presents a question of law subject to de novo review. *Orion Flight Servs., Inc. v. Basler Flight Serv.*, 2006 WI 51, ¶ 16, 290 Wis. 2d 421, 714 N.W.2d 130.

> The purpose of statutory interpretation is to determine what a statute means in order to give the statute its full, proper, and intended effect. ... Generally, language is given its common, ordinary, and accepted meaning. In addition, statutory language is interpreted in the context in which it is used, in relation to the language of surrounding or closely related statutes, and interpreted to avoid absurd or unreasonable results.

("Our task as the reviewing court is to search the record for reasons to sustain the trial court's exercise of discretion.") (citing *Brandt v. Witzling*, 98 Wis. 2d 613, 619, 297 N.W.2d 833 (1980)).

[4] We are given pause by the circuit court's statement that Douglas and the GAL failed to overcome a presumption. We observe no presumption set forth in WIS. STAT. § 767.863(1m) with regard to whether genetic testing is in a child's best interest, which was the only issue before the court.

> If the meaning is plain, we ordinarily stop the inquiry.
> However, if a statute is ambiguous, we examine extrin-
> sic sources, such as legislative history, to ascertain the
> legislative intent. A statute is ambiguous if the stat-
> ute's ability to support two reasonable constructions
> creates an ambiguity [that] cannot be resolved
> through the language of the statute itself.

*Id.*, ¶¶ 16–17 (internal quotation marks and citations omitted).

■■

¶ 21. Arika asserts that the language, "the ac-
tion shall be dismissed[,]" is clear. We agree, but that
tells us nothing regarding whether the dismissal
should be with or without prejudice. Arika, however,
asserts this language means that the determination of
whether testing is in a child's best interest constitutes
an adjudication on the merits, giving rise to the doc-
trine of res judicata/issue preclusion. The doctrine of
res judicata bars subsequent claims that were or could
have been litigated in the original proceeding. *Landess
v. Schmidt*, 115 Wis. 2d 186, 191, 340 N.W.2d 213 (Ct.
App. 1983).

¶ 22. While res judicata has little to do with
statutory interpretation in the first instance, we reject
Arika's assertion that a best-interest determination is
an adjudication on the merits here, where a putative
father seeks genetic testing to determine whether he is
the biological father and, ultimately, to determine
custody. Indeed, had the circuit court allowed testing
to proceed, it could not reasonably be argued that the
best-interest determination was an adjudication of the
merits. Moreover, as the circuit court correctly recog-
nized, a child's best interest is a fluid matter; changed
circumstances might result in a different determina-
tion. Douglas could not have litigated the issue of

changed circumstances that were yet to have occurred. Thus, issue preclusion would not apply regardless. *See Shanee Y. v. Ronnie J.*, 2004 WI App 58, ¶¶ 18–20, 271 Wis. 2d 242, 677 N.W.2d 684 (held res judicata did not preclude adjudicated father from reopening default paternity judgment; considered the then-current best interests of the children); *see also* Wis. Stat. § 767.893(3) "Motion to reopen." (allows reopening of default judgments that adjudicated a person to be the father).

¶ 23. Douglas, on the other hand, acknowledges Wis. Stat. § 767.863(1m) is silent regarding prejudice, and he indicates he was unable to locate any legislative history informing the issue. However, he states the paternity action statute of limitations was enlarged from five to six years, and now to nineteen years, and argues that increase shows an intent to "increase the length of time for opportunities for paternity actions." We do not find that argument convincing; an increase in the time allowed for bringing an initial action is unrelated to the issue of whether the legislature intended a dismissal to be with or without prejudice. Douglas further argues that the legislature must have intended to allow dismissals without prejudice because otherwise it would have explicitly stated that dismissals shall be with prejudice. That argument, however, cuts both ways, as the legislature similarly could have inserted language authorizing a court to dismiss without prejudice.

¶ 24. Our interpretation of Wis. Stat. § 767.863(1m) is informed by the surrounding paternity statutes. First, we consider a subsection of the paternity procedures statute, Wis. Stat. § 767.82(8), "Procedures applicable to other matters in action[,]" which provides: "In all other matters, paternity pro-

ceedings shall be governed by the procedures applicable to other actions affecting the family." "Action affecting the family" includes, inter alia, actions concerning divorce, custody, child support, physical placement or visitation, and paternity. Wis. Stat. § 767.001(1). In other family actions, courts consider the best interests of children at various points in time; it is not a static determination. For example, a court considers a child's best interest when initially allocating custody and physical placement, see Wis. Stat. § 767.41(5) (am), and does so again upon requests for modification, see Wis. Stat. § 767.451(1), (5m). Thus, § 767.82(8) weighs in favor of an interpretation that a court would be permitted to subsequently reassess a child's best interest in a § 767.863(1m) paternity action.

¶ 25. We also consider the statute specifying the contents of a paternity petition, Wis. Stat. § 767.80(5)(b), which provides:

> The petition shall state . . . whether or not an action by any of the parties to determine the paternity of the child or rebut the presumption of paternity to the child has at any time been commenced . . . in this state or elsewhere. If a paternity judgment has been rendered, or if a paternity action has been dismissed, the petition shall state the court that rendered the judgment or dismissed the action, and the date and the place the judgment was granted if known.

Because it demands the details of a dismissal but does not then indicate an action would be precluded by it, this paragraph suggests a court may consider a subsequent paternity petition even if there was a prior dismissal.

¶ 26. Finally, we consider Wis. Stat. § 767.88, titled, "**Pretrial paternity proceedings**." Subsection

767.88(1) requires courts to conduct a pretrial hearing at which the parties "may present and cross-examine witnesses, request genetic tests, and present other evidence relevant to the determination of paternity." Further:

> On the basis of the information produced at the pretrial hearing, the court shall evaluate the probability of determining the existence or nonexistence of paternity in a trial and shall so advise the parties. On the basis of the evaluation, the court may make an appropriate recommendation for settlement to the parties. This recommendation may include any of the following:
>
> (a) That the action be dismissed with or without prejudice.
>
> . . . .

Subsection 767.88(2). Regardless whether the hearing in the present case might be considered a pretrial hearing under § 767.88, this statute expressly contemplates that circuit courts possess discretion to dismiss an action with or without prejudice prior to a trial on the merits. Consequently, this statute strongly suggests the legislature intended that courts have such discretion when dismissing actions under WIS. STAT. § 767.863, where the ultimate issue of paternity is similarly not reached.

¶ 27.　Having considered WIS. STAT. § 767.863 in the context of the surrounding paternity statutes, and in light of the overarching concern of children's best interests in actions affecting the family, we conclude circuit courts have discretion to dismiss actions without prejudice under that statute. Here, the circuit court provided its rationale for dismissing without

prejudice, and Arika does not contend the court erroneously exercised its discretion in that respect.

¶ 28. No WIS. STAT. RULE 809.25 appellate costs are allowed on Douglas's appeal; Douglas may recover such costs with respect to Arika's cross-appeal.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.