PER CURIAM.
¶ 1 B.H. appeals a circuit court order adjudicating M.S.G. the father of a child born to J.L.H. after B.H. and J.L.H. married. B.H. argues that his due process and statutory rights were violated by the failure to name or join him as a party prior to the time a court commissioner issued an order for genetic testing. We assume, without deciding, that B.H. has shown a violation of his rights. We conclude, however, that the circuit court provided a sufficient remedy for this asserted violation when the court joined B.H. as a party and gave him an opportunity to participate in the circuit court's review of the court commissioner's decision to order testing. B.H. also argues that the circuit court erred in its application of best interest factors. We disagree. The order is affirmed.
Background
¶ 2 In summarizing the factual background, we omit procedural history that has no direct bearing on B.H.'s appeal.
¶ 3 The child was born in March 2014, shortly after B.H. and J.L.H. married. The child's birth during this marriage triggered a statutory presumption that B.H. was the child's father. See WIS. STAT. § 891.41(1)(a).[1]
¶ 4 In August 2015, M.S.G. petitioned for a paternity judgment, alleging that he was the child's father. M.S.G. named and served J.L.H. but not B.H. as a party.
¶ 5 In December 2015, upon M.S.G.'s request, a family court commissioner ordered genetic testing. The record contains what appears to be a copy of the test results, indicating a probability of 99.999999997% that M.S.G. is the child's biological father. The court commissioner adjudicated M.S.G. the child's father based on the test results.
¶ 6 J.L.H. sought a de novo hearing, and B.H. moved to intervene. B.H.'s motion came before the circuit court, and the court granted it.[2]
¶ 7 In competing filings before the circuit court, M.S.G. and B.H. disputed whether B.H. effectively should be bound by the court commissioner proceedings and whether M.S.G. or B.H. should be adjudicated the child's father. B.H. argued that the circuit court should not consider the test results unless and until the court first determined as a threshold matter that genetic testing was in the child's best interest.
¶ 8 The circuit court agreed to hold an evidentiary hearing addressing the child's best interest. The court concluded that genetic testing was in the child's best interest and, having reached that conclusion, proceeded to adjudicate M.S.G. the child's father.
Discussion
¶ 9 We begin with an argument that M.S.G. makes. M.S.G. contends that B.H.'s briefing fails to comply with our rules and that B.H.'s appeal is frivolous. M.S.G. argues that, based on B.H.'s deficient briefing, we should dismiss B.H.'s appeal and impose other sanctions.
¶ 10 Although we agree that B.H.'s briefing is deficient, we decline to dismiss the appeal or to impose other sanctions. As to requested sanctions based on frivolousness, we note that M.S.G. did not, as required, file a separate motion asserting that the appeal is frivolous. See Howell v. Denomie , 2005 WI 81, ¶ 19, 282 Wis. 2d 130, 698 N.W.2d 621 ("[P]arties wishing to raise frivolousness must do so by making a separate motion to the court.... [A] statement in a brief that asks that an appeal be held frivolous is insufficient notice to raise this issue.").
¶ 11 We turn to B.H.'s arguments. B.H.'s briefing is difficult to follow, but his main argument seems to be that his due process and statutory rights were violated by the failure to name or join him as a party prior to the court commissioner's decision to order genetic testing, and that the evidentiary hearing the circuit court subsequently held failed to remedy this alleged violation. B.H. apparently takes the position that the later hearing was no cure because the circuit court, when deciding as a threshold matter whether genetic testing was in the child's best interest, took into account the test results showing that M.S.G. was the biological father. B.H. also argues that the court erred in its application of best interest factors.
¶ 12 We address these arguments in separate sections below. Neither argument persuades us that we ought to reverse the circuit court's order.
A. Due Process and Statutory Rights Violation, and the Remedy for This Asserted Violation
¶ 13 We begin with B.H.'s argument that his due process and statutory rights were violated by the court commissioner's genetic testing order. As discussed further below, we assume without deciding that such a violation or violations occurred, but conclude that B.H. already received a sufficient remedy.
¶ 14 In support of his rights violation argument, B.H. cites several statutes and cases. However, B.H. does little by way of discussing these authorities. As a result, we have difficulty pinpointing the legal basis for his argument. His argument appears to be based on the statutory presumption under WIS. STAT. § 891.41(1)(a) that, as the husband of the child's mother, he was the child's father, and also on an additional statutory provision, WIS. STAT. § 767.863(1m).
¶ 15 As to the presumption, we understand B.H. to be arguing that his status as the presumptive father made him a necessary party, with due process and statutory rights to fully participate in any paternity proceedings concerning the child. See State v. Jody A.E. , 171 Wis. 2d 327, 332, 344, 491 N.W.2d 136 (Ct. App. 1992) (concluding that a child's mother is a necessary party in a paternity action); see also Chad M.G. v. Kenneth J.Z. , 194 Wis. 2d 689, 697, 535 N.W.2d 97 (Ct. App. 1995) (recommending that "when a paternity action is initiated by a party, trial courts take affirmative steps to ensure that those persons whose similar interests remain unlitigated are added as additional parties").
¶ 16 As to the additional statutory provision, WIS. STAT. § 767.863(1m), we understand B.H. to be arguing that, had he been a party during the court commissioner proceedings, he would have had the opportunity under this statute to prevent genetic testing by showing that testing was not in the child's best interest. See W.W.W. v. M.C.S. , 161 Wis. 2d 1015, 1020-22 & n.1, 1034, 468 N.W.2d 719 (1991) (concluding that the pertinent statutory language "explicitly permits the court to prevent a blood test ... if it determines that such an order would not be in the best interests of the children"); Douglas L. v. Arika B. , 2015 WI App 80, ¶ 19, 365 Wis. 2d 257, 872 N.W.2d 357 (concluding that § 767.863(1m)"provides that if a court determines genetic testing is not in the child's best interest, 'the action shall be dismissed' ").[3]
¶ 17 We will assume, without deciding, that the failure to name or join B.H. as a party prior to the issuance of the court commissioner's genetic testing order violated B.H.'s due process and statutory rights. That brings us to the remedy for this assumed violation.
¶ 18 Here, as noted in the background section, after the circuit court joined B.H. as a party, the court held an evidentiary hearing and concluded de novo, as a threshold matter, that genetic testing was in the child's best interest. So far as we can tell, B.H. agrees that this hearing would have been a sufficient remedy but for one thing. According to B.H., the hearing was inadequate because the court considered the results of the genetic test in deciding whether genetic testing was in the child's best interest. B.H. argues that we should reverse and remand so that he may receive a new best interest hearing before a new circuit court judge who does not know, and will not consider, the test results.[4] We are not persuaded.
¶ 19 We begin by clarifying the purposes for which the circuit court did and did not rely on the genetic test results. It is true that the circuit court admitted evidence of the test results prior to rendering its threshold decision that genetic testing was in the best interest of the child. It is also true that the court appears to have relied on those results when it made the ultimate decision to adjudicate M.S.G. the child's father. However, the court plainly stated that it would not rely on the test results for purposes of determining whether genetic testing was in the child's best interest. When admitting the test results into evidence, the court stated that the results are "not a factor that's going to have a bearing on the Court's decision about best interest" and that "I am not considering the report or the result of the genetic testing" for that purpose.
¶ 20 B.H. points to later statements by the court referring to the need for "clarity" and for an "accurate" determination of paternity. B.H. apparently sees these statements as references to the test results. In context, however, we think it is clear that the court was not referencing the test results but instead was expressing the court's view that it was desirable that the child learn the true identity of his biological father, regardless whether that was M.S.G. or B.H.
¶ 21 B.H. may mean to argue that, even though the court stated that it was disregarding the test results for purposes of the threshold genetic testing question, the court likely took the results into account for this purpose anyway. B.H. asserts that "it seems unlikely that [the court] would have been able to ignore [the genetic testing], as [the court] was well aware of the results." We disagree. When a circuit court sits as a fact finder, it is commonplace for the court to make decisions in which the court disregards information brought to the court's attention, such as when a court rules that evidence is inadmissible, or when, as here, the court admits evidence for one purpose but not another.
¶ 22 Before moving on, we make note of an argument that, so far as we can tell, B.H. does not make.
¶ 23 B.H. does not argue that the circuit court should have disregarded all factual events subsequent to the genetic testing, including events that might have been influenced by the test results. That is, B.H. does not argue that the proper remedy here was for the circuit court to rewind the clock and consider only the circumstances as they existed in December 2015, prior to the court commissioner's genetic testing order. Accordingly, we need not address whether such an argument would have merit. At the same time, we note that we see nothing in the court's extensive factual findings to suggest that any post-December 2015 information was significant to the court's genetic testing decision.
B. Best Interest Factors
¶ 24 We turn to B.H.'s argument that the circuit court erred in its application of best interest factors in deciding whether genetic testing was in the child's best interest. We reject this argument for the reasons that follow.
¶ 25 We start with our standard of review. According to the discussion in Douglas L. , 365 Wis. 2d 257, one of the cases that B.H. cites, there is confusion in case law as to the standard of review in this context. Douglas L. explains that, although it is clear that "we accept the circuit court's factual findings unless clearly erroneous," confusion exists as to whether we apply de novo review or erroneous exercise of discretion review to the question of whether, based on those findings, genetic testing is in the child's best interest. See id. , ¶¶ 10-18. Here, our decision would be the same regardless which standard we apply.
¶ 26 B.H.'s argument as to the best interest factors assumes that the pertinent factors here are the same factors that courts apply when making custody and physical placement determinations under WIS. STAT. § 767.41(5)(am). For purposes of this opinion only, we make the same assumption.
¶ 27 WISCONSIN STAT. § 767.41(5)(am) provides:
FACTORS IN CUSTODY AND PHYSICAL PLACEMENT DETERMINATIONS . (am) ... Subject to pars. (bm) and (c), the court shall consider the following factors in making its determination:
1. The wishes of the child's parent or parents, as shown by any stipulation between the parties, any proposed parenting plan or any legal custody or physical placement proposal submitted to the court at trial.
2. The wishes of the child, which may be communicated by the child or through the child's guardian ad litem or other appropriate professional.
3. The interaction and interrelationship of the child with his or her parent or parents, siblings, and any other person who may significantly affect the child's best interest.
4. The amount and quality of time that each parent has spent with the child in the past, any necessary changes to the parents' custodial roles and any reasonable life-style changes that a parent proposes to make to be able to spend time with the child in the future.
5. The child's adjustment to the home, school, religion and community.
6. The age of the child and the child's developmental and educational needs at different ages.
7. Whether the mental or physical health of a party, minor child, or other person living in a proposed custodial household negatively affects the child's intellectual, physical, or emotional well-being.
8. The need for regularly occurring and meaningful periods of physical placement to provide predictability and stability for the child.
9. The availability of public or private child care services.
10. The cooperation and communication between the parties and whether either party unreasonably refuses to cooperate or communicate with the other party.
11. Whether each party can support the other party's relationship with the child, including encouraging and facilitating frequent and continuing contact with the child, or whether one party is likely to unreasonably interfere with the child's continuing relationship with the other party.
12. Whether there is evidence that a party engaged in abuse, as defined in s. 813.122(1)(a), of the child, as defined in s. 813.122(1)(b).
12m. Whether any of the following has a criminal record and whether there is evidence that any of the following has engaged in abuse, as defined in s. 813.122(1)(a), of the child or any other child or neglected the child or any other child:
a. A person with whom a parent of the child has a dating relationship, as defined in s. 813.12(1)(ag).
b. A person who resides, has resided, or will reside regularly or intermittently in a proposed custodial household.
13. Whether there is evidence of interspousal battery as described under s. 940.19 or 940.20(1m) or domestic abuse as defined in s. 813.12(1)(am).
14. Whether either party has or had a significant problem with alcohol or drug abuse.
15. The reports of appropriate professionals if admitted into evidence.
16. Such other factors as the court may in each individual case determine to be relevant.
¶ 28 We understand B.H. to be making three arguments based on these factors. Each argument is easily rejected.
¶ 29 First, B.H. argues that the court erred in its application of factor 10, pertaining to cooperation and communication between the parties. As far as we can tell, this argument amounts to a challenge to the circuit court's underlying factual findings on these topics and is based on limited evidence that might have supported different findings. B.H.'s challenge fails because he does not assert or show that the findings the court did make were against the great weight and clear preponderance of the evidence. See Dickman v. Vollmer , 2007 WI App 141, ¶ 15, 303 Wis. 2d 241, 736 N.W.2d 202 ("The clearly erroneous standard is difficult for a challenger to overcome ... because reversal is not justified unless the evidence for a contrary finding itself constitutes the great weight and clear preponderance of the evidence.").
¶ 30 Second, B.H. argues that the court failed to take into account factor 3, pertaining to the child's relationship with siblings. B.H. argues that the court ignored the evidence on this factor, namely, testimony by Dr. Babbitt. B.H. is wrong. The circuit court's findings show that the court considered Dr. Babbitt's testimony and rejected that testimony as a reason to disallow genetic testing.
¶ 31 Third, B.H. argues that the circuit court erred by placing considerable weight on a factor that is not in the statute, the need for "clarity." However, the statute includes catch-all factor 16, which allows courts to consider "[s]uch other factors as the court may in each individual case determine to be relevant." See WIS. STAT. § 767.41(5)(am)16. Here, the circuit court's findings make clear that the need for clarity in the child's life and certainty as to who the child's father is were important considerations.
Conclusion
¶ 32 For the reasons stated above, we affirm the order adjudicating M.S.G. the child's father.
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

Wisconsin Stat. § 891.41(1) provides, in pertinent part:
A man is presumed to be the natural father of a child if any of the following applies:
(a) He and the child's natural mother are or have been married to each other and the child is conceived or born after marriage and before the granting of a decree of legal separation, annulment or divorce between the parties.
All references to the Wisconsin Statutes are to the 2015-16 version.

The circuit court determined that J.L.H.'s request for a de novo hearing was untimely. J.L.H. has not appealed.

Wisconsin Stat. § 767.863(1m) provides:
(1m) Paternity allegation by male other than husband; when determination not in best interest of child . In an action to establish the paternity of a child who was born to a woman while she was married, if a male other than the woman's husband alleges that he, not the husband, is the child's father, a party may allege that a judicial determination that a male other than the husband is the father is not in the best interest of the child. If the court or a supplemental court commissioner under s. 757.675(2)(g) determines that a judicial determination of whether a male other than the husband is the father is not in the best interest of the child, no genetic tests may be ordered and the action shall be dismissed.
Notably, this statute applies only when, as here, there is an action to establish paternity "of a child who was born to a woman while she was married" and "if a male other than the woman's husband alleges that he, not the husband, is the child's father."

In one place in his briefing, B.H. asserts that the proper remedy is to vacate the paternity judgment and dismiss M.S.G.'s paternity action without prejudice so that M.S.G. can bring a new action naming B.H. as a party. So far as we can tell, however, B.H. requests this dismissal remedy only because he sees it as a way to obtain the new best interest hearing he seeks. Thus, we do not separately address B.H.'s dismissal request.