COURT OF APPEALS
DECISION
DATED AND FILED

**February 17, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP253**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019FA702

**IN COURT OF APPEALS
DISTRICT IV**

IN RE THE MARRIAGE OF:

BUFFY LINETTE STAHL,

    PETITIONER-RESPONDENT,

  V.

GREGORY SCOTT STAHL,

    RESPONDENT-APPELLANT.

APPEAL from a judgment of the circuit court for Dane County: MARIO WHITE, Judge. *Affirmed.*

Before Blanchard, P.J., Kloppenburg, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   In this divorce case, Greg Stahl purports to make eight arguments challenging rulings made by the circuit court.[1]  We reject each argument and affirm all challenged rulings.

¶2    We note from the outset that Greg and Buffy are each self-represented on appeal.  We grant both sides "'a degree of leeway'" in presenting their arguments "in recognition of the fact that," unlike attorneys, "they are … unfamiliar with the procedural rules and substantive law that might govern their appeal."  *See State ex rel. Wren v. Richardson*, 2019 WI 110, ¶25, 389 Wis. 2d 516, 936 N.W.2d 587.  At the same time, however, we cannot "step out of our neutral role to develop or construct arguments for parties; it is up to them to make their case," and when "they fail to do so, we may decline to entertain those issues."  *SEIU, Loc. 1 v. Vos*, 2020 WI 67, ¶24, 393 Wis. 2d 38, 946 N.W.2d 35.  "[B]y definition," the "degree of leeway" afforded to self-represented litigants is limited.  *Wren*, 389 Wis. 2d 516, ¶25.[2]

---

[1] We refer to the parties by their first names because they share a surname.  The appellant refers to himself as "Greg" in his briefing and we follow that usage.

[2] Greg's briefing suffers from the following notable defect, which is at times an impediment we cannot overcome even after we grant Greg a degree of leeway.  He apparently intends for us to construe the often fragmentary, unclear assertions that he makes in the "argument" sections of his briefing together with assertions he makes in the "statement of issues" sections and also with scattered references made in his "statement of facts."  The rules contemplate that parties will use cross references in briefing; parties in appeals do this every day in a clear manner.  However in Greg's briefing, in many instances, we struggle to find clear connections among these references and assertions that could form a discernable, supported argument based on pertinent legal principles.  When this approach is unclear, as it frequently is, it represents inadequate briefing even for a pro se litigant.  *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (appellate courts may decline to address undeveloped and inadequately briefed issues).

In contrast, as will become evident from some of our discussion, Buffy's briefing for the most part relies on proper citations to the record and meaningful references to legal authority that are demonstrably connected to specific evidence in the case.

## BACKGROUND

¶3    The parties were married in August 2004.  They did not have children.  The judgment of divorce was issued in January 2021.[3]  The circuit court addressed motions for contempt by each party against the other, also in January 2021.  The judgment valued the marital property as of February 22, 2020, and the judgment stated that the parties were retroactively divorced as of October 14, 2020.  At the time the judgment was issued Greg was 44 and Buffy was 39.

¶4    The circuit court decided not to award maintenance to either party, and made findings that included the following in support of that decision.  "As of October 2015, Greg earned $107,102 and Buffy earned $103,500."  The parties agreed, before October 2016, that Greg "would not quit" a job he had with a railroad until a new, planned building to house a planned woodworking or cabinetry business "was completed and [the business] was operating."  However, in October 2016, Greg "unilaterally quit his railroad job … and promised to complete the construction of the building by April of 2017.  Buffy did not agree to Greg quitting his job at that time."  The planned woodworking or cabinetry business and its location are sometimes respectively referred to as "the business" (or "the new business") and "the commercial building."

¶5    The circuit court made numerous property division rulings based on multiple findings.  Most relevant to issues that Greg may mean to challenge on appeal, the court made the following determinations:

---

[3] From the time of filing through a partial trial in February 2020, the presiding judge was the Hon. William E. Hanrahan.  Upon the retirement of Judge Hanrahan, the Hon. Mario D. White was assigned the case and presided over a resumed trial in August 2020.

- The marital estate includes debts totaling $22,500 of loans from Buffy's mother, and those debts "shall be paid from the sale proceeds of the commercial building when it is sold, before the parties equally divide the balance of the proceeds after the mortgage, real estate taxes, and costs of sale are paid and after" a state tax bill was paid.

- "Greg has no need to have access to the commercial building. Buffy's name shall be added to the deed for the property, and the parties shall own it as tenants in common. Buffy shall be responsible for selling the property. Greg shall remove his personal property and the equipment, no later than November 2, 2020, and give Buffy the keys to the building. As of that date, Buffy shall have exclusive use of the commercial building and may lease it until it is sold. Buffy shall communicate any offers regarding the property with Greg within two business days, but any offer of $600,000 or more shall be accepted and both parties shall cooperate in completing the sale if such an offer is received."

- "Greg is awarded the business equipment and any loan associated with the equipment. Greg shall hold Buffy harmless on the loan. Greg shall remove the equipment from the commercial building by November 2, 2020."

- "Greg shall dissolve [the business] no later than November 20, 2020 and provide proof of such dissolution to Buffy by November 20, 2020."

¶6     The following standards of review are applicable across multiple issues:

> The division of marital property and the calculation of maintenance are matters typically left to the sound discretion of the circuit court. We do not disturb a circuit court's discretionary determinations about property division and the calculation of maintenance unless the court erroneously exercised its discretion. A circuit court erroneously exercises its discretion if it makes an error of law.

*McReath v. McReath*, 2011 WI 66, ¶21, 335 Wis. 2d 643, 800 N.W.2d 399 (citations omitted). In addition, a circuit court's

> determination of the value of an asset of the marital estate is a finding of fact. The court should determine the fair

> market value of an asset as of the date of divorce. We will not upset this finding unless it is clearly erroneous.

*Preuss v. Preuss*, 195 Wis. 2d 95, 107, 536 N.W.2d 101 (Ct. App. 1995) (citations omitted).

## DISCUSSION

### I. Property Division: Buffy's Role In Woodworking Business

¶7 Greg asserts that the evidence shows that, during the course of the marriage, he "wanted to open" an aquarium fish store, but instead of doing that he "built" the new business, because that is what "Buffy wanted." In presumably related assertions in a separate area of his brief, Greg submits that the circuit court made a "lopsided" "division of the [marital] estate" by failing to recognize the following: "Buffy encouraged" him to quit his job to pursue the new business; Greg made an "equity contribution" to the marital estate "by constructing an 8400 square foot building" for the business; and Buffy should not have received the benefit of a series of favorable property division decisions in her favor.

¶8 In a detailed response, Buffy cites extensive evidence and related arguments that were presented to the circuit court that could have reasonably supported determinations that including the following: Greg made a unilateral decision to quit his job in October 2016; Greg significantly reduced the value of the marital estate when he quit his railroad job, leaving Buffy to contribute more to the marital estate; Greg actually received "a windfall of $34,735" because the court did not reimburse Buffy, but could have, for business expenses incurred by Greg; and, as Greg himself acknowledged in the circuit court, that the business was unsuccessful and he needed to liquidate the business, pay its bills, and get a

job. When the above summarized standards of review are applied, the evidence cited by Buffy easily defeats whatever argument Greg intends to make.[4]

¶9    Further, Greg's reply brief contains no responsive content on these topics and therefore he fails to dispute Buffy's positions. Accordingly, we deem him to have conceded her points. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to respond in reply brief to argument made in response brief may be taken as concession).

## II.    Property Division:  Should Be Even Split

¶10    Greg asserts that the marital property "should be divided 50/50 and a balance sheet should be created to show this."  This section of Greg's brief consists of a jumble of assertions, which lack citations to the record, and citations to legal authority that are not tied to clear arguments.  The suggestion is that, in addressing the division of marital property, the circuit court clearly erred in finding facts (but Greg does not clearly identify the particular facts and why they were clear errors) and erroneously exercised its discretion (but Greg does not clearly explain how).  In sum, we cannot identify a single topic on which Greg (1) identifies a specific ruling of the circuit court, (2) explains how the circuit

---

[4] Greg suggests at points in his briefing that pertinent findings of Judge White were inconsistent with findings made by Judge Hanrahan and that this should result in reversal.  We reject whatever argument Greg intends to make for at least the reason that he fails to recognize that it was Judge White's responsibility, as the successor judge, to make or affirm all pertinent findings, and then to apply the pertinent law to those facts.  "It is well established that a successor judge in a circuit court proceeding has the authority to modify or reverse decisions, judgments or rulings of a predecessor judge, so long as the predecessor judge was empowered to make such modifications."  *Dietrich v. Elliott*, 190 Wis. 2d 816, 822, 528 N.W.2d 17 (Ct. App. 1995).  We also observe that even the findings that Greg now quotes reflect that Judge Hanrahan expressed conclusions that the court identified as merely tentative and preliminary.

court either clearly erred in fact finding or erroneously exercised its discretion, and (3) relies on identified record evidence. Thus, we lack a basis in Greg's briefing to disturb any decision by the circuit court.

¶11 Further, Greg's reply brief contains no responsive content after Buffy addresses most if not all of the topics that Greg may intend to raise. *See United Coop.*, 304 Wis. 2d 750, ¶39.

### III. Property Division: Repayment Of Loans From Buffy's Mother

¶12 Greg challenges the circuit court's decision to include $22,500 in loans from Buffy's mother as debts of the marital estate, which "shall be paid from the sale proceeds of the commercial building when it is sold, before the parties equally divide the balance of the" net proceeds from the sale. Greg's argument rests on the following provision in a temporary order and stipulation between the parties: "Each party shall pay and be responsible for, and shall hold the other harmless from, any debts incurred in his or her name subsequent to May 1, 2019."

¶13 Buffy responds with points that include the following. First, Greg was found in contempt for failing to comply with the temporary order and stipulation, which Buffy suggests permitted the circuit court to evaluate the obligations of the parties under that document in light of his contemptuous conduct. Second, because the loan proceeds were part of the marital estate and therefore for the benefit of both parties, these were not "debts incurred in [Buffy's] name" as that phrase is used in the temporary order and stipulation. Again here we deem the absence of responsive content in Greg's reply brief to be concessions of one or both of these positions by Buffy. *See United Coop.*, 304 Wis. 2d 750, ¶39.

### IV.    Property Division:  Buffy "Should Be Found In Contempt" For Selling Equipment Of The Business "In Contempt Of Court Orders"

¶14    Greg's briefing states that he "is asking the court [that he] be reimbursed, or his parents reimbursed, for the machinery Buffy sold in contempt of the court orders," wholly or in part (it is unclear which) based on the ground that the circuit court "should have acknowledged the machinery was no[]longer marital property to be divided once the machinery was seized by Summit Credit Union."  This involves issues that were discussed in the circuit court in connection with motions for contempt filed by both sides regarding a complicated series of events and which were extensively addressed by the court at a hearing in January 2021.  The parties debated issues surrounding equipment of the business.  At least some of the equipment was subject to replevin by a creditor.  Greg failed to remove equipment from the building by the deadline set forth in the court order quoted above ("Greg shall remove his personal property and the equipment, no later than November 2, 2020").  By the time of the hearing, Greg's parents, who of course are not parties to this divorce action, had settled with the creditor for approximately $50,000.

¶15    The court dismissed Greg's contempt motion and ruled as follows on Buffy's contempt motion:

> Greg failed to remove his equipment from the commercial building as ordered.  Though he claims to have asked his lawyer to petition the court for an extension, no such extension request was made.  The equipment was the subject of a loan with Summit Credit Union.  Summit Credit Union obtained a $50,000 lien on the equipment after Greg failed to abide by the terms of a stipulated dismissal.  That equipment was subsequently purchase[d] by Greg's parents to satisfy the judgment against Greg.  Because the equipment was still in the commercial building some of it was included in the sale of the commercial building.  Those items listed in Exhibit #2, Document 214,

pp. 8-9, are therefore properly included in the sale of the commercial building and not awarded to Greg.

¶16    Buffy contends that Greg relies on "references to documents that are not in the record," that these issues are "unrelated to the Judgment of Divorce," and that this court "cannot address arguments not developed, not appealed, and which do not exist." Greg appears to construe these statements as constituting, at least in part, a jurisdictional challenge. He briefly points out that, pursuant to WIS. STAT. § 809.10(4), "[a]n appeal from a final judgment or final order brings before the [appellate] court all prior nonfinal judgments, orders and rulings adverse to the appellant and favorable to the respondent made in the action or proceeding not previously appealed and ruled upon." We construe the notice of appeal filed by Greg on January 25, 2021, sufficient to provide this court with jurisdiction over an appeal of any issues that were preserved in the course of the circuit court's rulings on the contempt motions.

¶17    However, we agree with Buffy's alternative argument that Greg's argument is undeveloped. Greg suggests that the circuit court was obligated to rule that, once the creditor repossessed the equipment, the equipment "was no[]longer marital property to be divided" by the court for the benefit of the parties. But he provides no legal authority addressing how the circuit court should have handled this scenario differently than it did, taking into account the court's finding that Greg failed to remove the equipment in the time period ordered by the court. Further, Greg does not direct us to record evidence that he provided the circuit court with legal authority supporting any alternative approach to the one taken by the court and therefore Greg appears not to have preserved any such argument. *See Schonscheck v. Paccar*, *Inc.*, 2003 WI App 79, ¶10, 261 Wis. 2d

769, 661 N.W.2d 476 ("Generally, we do not consider legal issues which are raised for the first time on appeal.").

¶18    Greg briefly asserts that the circuit court effectively deemed his parents' satisfaction of the creditor's judgment on its equipment lien as a "gift," and "gifts are not subject to division under WIS. STAT. § 767.61." However, neither the parties nor the court discussed the parents' payment as a "gift." Instead, the court made a difficult set of discretionary decisions in a time-sensitive scenario and Greg fails to show legal error. The circuit court was presented with evidence that Buffy needed to promptly sell the building containing equipment as part of the resolution of property division issues, and this task was complicated by Greg's failure to address the status of the equipment on the timeline ordered by the court and by the unanticipated decision of Greg's parents to satisfy the creditor's judgment.[5]

¶19    Greg asserts that the circuit court should have found Buffy in contempt but fails to develop an argument, based on applicable legal standards, that could call for reversal on that issue.[6]

---

[5] To the extent that Greg attempts to suggest procedural irregularities in connection with the circuit court's resolution of the contempt motions, his positions lack support and are confusing. For example, he alleges that the circuit court "interrogat[ed] Greg to make it[s] decision," without explaining why we should conclude that the court posing questions to him in order to clarify relevant facts was in any way improper. To the extent that Greg means to argue that the court gave him a deadline to remove the equipment that was impossible for him to meet, any such argument is unavailing for at least the reason that he does not point to items in the record showing that, at the time the court made its ruling, it had before it evidence and argument from which it should have understood that the deadline was impossible to meet.

[6] What Greg calls his eighth argument on appeal is undeveloped but is in some unclear manner related to his fourth argument. In the purported eighth argument, Greg asserts that the circuit court should have held Buffy in contempt based on her alleged retention of items from the commercial building. Greg merely alludes to circuit court decisions, but then fails to provide a

(continued)

¶20 Related to the specific court order that "Greg shall dissolve [the business] no later than November 20, 2020," Greg asserts that the circuit court "did not have the right to dissolve" the business and in doing so he references WIS. STAT. § 183.0902, the "judicial dissolution" provision of the chapter of the Wisconsin Statutes governing limited liability corporations. This is not a developed argument. Further, assuming without deciding that § 183.0902 applied to the circuit court decision here because this is "a proceeding by or for a member," *see* § 183.0902 (intro.), Greg fails to explain why the circuit court could not have determined either that "it is not reasonably practicable to carry on the business of the limited liability company" or that "limited liability company assets are being misapplied or wasted," given all of the relevant circumstances, especially the uncertainties surrounding the new business and disagreements between the parties about whether and how to liquidate it, *see* § 183.0902(1), (5).

## V. Maintenance: The Circuit Court Should Have Awarded Maintenance To Greg

¶21 Greg asserts that the circuit court erred "in not awarding maintenance to Greg," and that he "should be awarded maintenance from Buffy in the amount of $4,310 per month for a period of ½ the length of the marriage." However, as Buffy points out, this argument ignores our standard of review and essentially asks this court to weigh the pertinent factors as we might deem appropriate, in place of the circuit court, based entirely on the appellate record.

---

single basis on which we could determine that the circuit court either clearly erred in finding facts or erred in applying legal standards.

¶22 The following are two illustrative examples of Greg's consistent failures to apply the correct standard of review. First, he asks us to conclude that the circuit court clearly erred in finding that his income in 2015 was $107,102, despite his own acknowledgement that this was based on a "personal financial statement" that he himself provided to Summit Credit Union. Second, he asserts that it was "pure speculation" for the circuit court to find that the amount that Greg earned in 2015 could assist the court in making a finding about his earning capacity at the time of the divorce. Greg essentially asks us to determine that the circuit court clearly erred in deciding that his past earnings are relevant to a determination of his earning capacity, but without providing a basis for us to reach that highly counterintuitive conclusion.

¶23 Further, yet again on this set of topics, after Buffy provides extensive citations to the record in support of the circuit court's discretionary decision, there is no responsive content in Greg's reply brief. *See United Coop.*, 304 Wis. 2d 750, ¶39.

## VI. Property Division: Calculation Of Sale Price Of Marital House

¶24 Greg's sixth argument involves the circuit court's decision to give Buffy exclusive authority to sell the marital home, with detailed direction as to how the proceeds should be spent and divided between Greg and Buffy, including

in an amended judgment addressing these topics. Greg asserts that the circuit court "significantly miscalculated the sale price" of the marital home.[7]

¶25 Buffy argues, with pertinent citations to the record, that Greg failed to raise these issues in the circuit court and generally agreed to the approach taken by the circuit court. *See Schonscheck*, *Inc.*, 261 Wis. 2d 769, ¶10. Further, in his reply brief, Greg fails to dispute Buffy's positions on this topic. For this reason, we also deem him to have conceded her argument on that point. *See United Coop.*, 304 Wis. 2d 750, ¶39.

### VII. Property Division: Division Of Commercial Building

¶26 Greg briefly asserts that the circuit court improperly required him to pay a utility bill of $4,816 for the commercial building when the court should have split the bill equally between the parties. He asserts that "[t]he building costs and profits of the sale of the building should be divided 50/50." Buffy essentially argues that Greg fails to explain why it was an erroneous exercise of the court's discretion to assign this particular bill to Greg. She argues that it "would be unreasonable to single out one debt of many" for reversal, "since Buffy was carrying more than half of these debts in total. All of the marital debts are accounted for on the balance sheet, including this one." Put differently, Buffy contends that the circuit court balanced this particular decision with numerous other property division decisions, some favoring Greg and some favoring Buffy.

---

[7] Greg also suggests that the circuit court relied on evidence on this topic that it could not properly consider, but he fails to develop an argument to that effect. He "requests an oral argument with the Court of Appeals where Buffy will be questioned" because, he submits, that is needed to create an adequate record. This suggestion rests on fundamental misunderstandings, such as a failure to appreciate that records are created solely in the circuit court before being reviewed by this court.

In his reply brief, Greg fails to dispute any aspect of Buffy's argument. Accordingly, we deem him to have conceded her argument on that point. *See United Coop.*, 304 Wis. 2d 750, ¶39.[8]

> *By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[8] Buffy asserts in her brief on appeal that we "should sanction Greg for his numerous rules violations." If by this she means that we should declare Greg's appeal frivolous and order him to pay costs as a result, this is not possible for at least the reason that she did not file a separate motion in this court asking that we do so. *Howell v. Denomie*, 2005 WI 81, ¶19, 282 Wis. 2d 130, 698 N.W.2d 621 ("parties wishing to raise frivolousness must do so by making a separate motion to the court"). To the extent that Buffy is instead asking us to recognize that Greg's briefing violates various rules, we have noted deficiencies in his briefing and we do not need to address the deficiencies further.